**MARLIN–ROCKWELL CORPORATION v. NATIONAL LABOR RELATIONS BOARD.**

**No. 9.**

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1941.

Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y., for petitioner.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, Lester M. Levin, Bertram Edises, Samuel Edes, and Robert Kramer, all of Washington, D. C., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This case is before us on the petition of Marlin-Rockwell Corporation to vacate an order of the Board issued January 19, 1940. The Board's answer asks enforcement of the order. The principal issues relate to the validity of an election at which International Union, United Automobile Workers of America, Local No. 338 was chosen as the collective bargaining agent of the employees of the petitioner's factory at Jamestown, New York.

The election was held on February 24, 1938, pursuant to a prior order of the Board. By a close vote, 175 to 155, the Union was elected, and the Board thereafter certified it as the exclusive representative of the employees for purposes of collective bargaining. The company refused to recognize the Union as collective bargaining agent because it had not been elected by a majority of the employees entitled to vote but only by a majority of those who voted. Apparently a refusal to bargain with the certified representative followed by a complaint based thereon and an order of the Board directing the employer to cease from such refusal, is the only way in which certification of a collective bargaining representative can be reviewed. A. F. of L. v. Labor Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed.

347. Upon charges by the Union of unfair labor practices by the company, the Board filed its complaint against the company in August 1938. This resulted, after hearings, in the order of January 19, 1940, which is now before us. This contains the usual cease and desist provisions, and affirmatively orders the company to bargain with the Union upon request; it also directs the reinstatement, with back pay, of two discharged employees, and the posting of notices of compliance with the order.

 The petitioner's complaints concerning the election will be considered in the order in which they have been presented in its brief. Section 9(b) of the Act, 29 U.S.C.A. § 159(b), gives the Board power to determine "the unit appropriate for the purposes of collective bargaining." The Board excluded apprentices from the 1938 election, although in a consent election held in 1937 they had been included. The apprentices are minors employed under contracts which require the consent of their guardians; the contracts are drafted and performed in co-operation with the State Department of Education and the Jamestown Board of Education. The special character of their employment relationship gives some basis for differentiating between apprentices and other employees. We cannot say that the decision to exclude them from the bargaining unit was so unreasonable or capricious as to pass the bounds of permissible discretion. Only if the Board has acted arbitrarily, may its discretion in determining the appropriate unit be overridden by the courts. International Ass'n etc. v. National Labor Relations Board, 71 App.D.C. 175, 110 F.2d 29, 46; National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 94 F.2d 138, 143, certiorari denied 304 U.S. 575, 58 S.Ct. 1045, 82 L.Ed. 1539. Moreover, the issue is academic; the whole number of apprentices was only five or six, and the result of the election could not have been affected had they been included in the unit.

 The next contention is that the Board abused its discretion in refusing to allow the company to have a representative present at the election for the purpose of checking the identity and eligibility of the persons who presented themselves to cast ballots. Refusal was put upon the ground that the Union refused to consent, and that the Board had consistently de-

clined to permit a representative of the employer to be present at elections ordered by the Board in the absence of consent by the union involved. Section 9 (c) of the Act, 29 U.S.C.A. § 159(c), provides that the Board may take a secret ballot of employees or utilize any other suitable method of ascertaining their representatives; it is silent as to election procedure. Hence the manner in which an election shall be conducted lies in the Board's discretion. If the Board desires the assistance of a representative of the employer to identify the employees who appear to vote, it may have it. But such assistance is not essential to a fair election; identification of the voters may be obtained by other means. Apparently the Board believes that considerations in favor of the presence of an employer representative are outweighed by the possibility that his presence may act as an inhibiting influence upon the employees' freedom of choice; hence the Board's general policy of denying permission unless the labor organization involved consents. There is no showing that the procedure adopted prevented a fair election. We cannot say that in adopting it the Board exceeded its discretion.

■ The ballots of four employees, who are said by the petitioner to have been clearly eligible to vote, were challenged by a representative of the Union and were not counted. This issue is immaterial. Assuming that the ballots should have been counted, the result of the election would have remained unaffected, for the Union's majority was twenty.

■ A more important question is whether there was error in receiving the votes of employees who were on the pay roll as of September 24, 1937 but had been laid off for lack of work prior to the election on February 24, 1938. There were 114 ballots cast by persons in this group. In ordering the election the Board directed that it be held "among all the employees * * * on the pay roll as of September 24, 1937, excluding those who have since quit or been discharged for cause * * *." The company contends that employees who were laid off for lack of work were "discharged for cause," but the Board did not so construe its order, nor do we. A man who is laid off with reasonable expectation of being called back as soon as the employer's business picks up may well be concerned in the working conditions to which he will probably return and feel a lively interest in the selection of a collective bargaining representative. It is not unreasonable to include such a man in the voting unit. A laid-off employee with seniority rights has been held to be "in the service of a carrier" within the meaning of the Railway Labor Act, 45 U.S.C.A. § 151(5). Nashville, C. & St. L. Ry. v. Railway Employees' Dept., 6 Cir., 93 F.2d 340, 342, certiorari denied 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110. In the case at bar the company had no contractual seniority obligations, but it did in fact expect to recall its former employees when work revived; such was its customary practice, although there was no obligation to rehire them. In our opinion the mutual expectation of re-employment justified the Board in treating the employee relationship of the laid-off men as continuing. Cf. Labor Board v. Waterman SS. Co., 309 U.S. 206, 219, 60 S.Ct. 493, 84 L.Ed. 704. It was therefore proper to allow them to participate in the election. However, the petitioner proved that two of the men it had laid off obtained equivalent jobs with other employers for whom they were working at the time of the election. Their ballots should not have been counted. They should be considered as having quit the service of the company; hence they were ineligible to vote by the terms of the order calling the election. But throwing out their ballots would not change the result of the election.

■ Finally it is urged that to be validly elected the bargaining agent must receive the votes of a majority of all employees in the unit appropriate for collective bargaining. Read literally, section 9(a) of the Act, 29 U.S.C.A. § 159(a), seems to require this; but it is so generally the custom in elections to permit a majority of those voting to decide the result, that we think the argument cannot be accepted. Under the Railway Labor Act it has been authoritatively held that the vote of a majority of the participants determines the choice, if the election was participated in by a majority of the employees entitled to vote. Virginian Ry. v. Federation, 300 U.S. 515, 560, 57 S.Ct. 592, 81 L.Ed. 789. The National Labor Relations Act has been similarly construed. National Labor Relations Board v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 477.

On the first branch of the case at bar we must conclude that the Union was

validly selected as the collective bargaining agent. So much of the order of the Board as commands the petitioner to cease from refusing to bargain with the Union, and affirmatively directs bargaining with it upon request, was proper and should be enforced.

As to that part of the order directing the reinstatement of Winans and Anderson little need be said. The words which each put in the mouth of the foreman who laid him off, if the Board cared to credit their testimony in preference to the reasons given by the company's witnesses, require us to accept the finding of discrimination; we cannot say that it is wholly without "substantial evidence."

Paragraph 2(c) of the order must, to conform to the Supreme Court's decision in Republic Steel Corp. v. National Labor Relations Board, 61 S.Ct. 77, 85 L.Ed. —, handed down November 12, 1940, be modified with respect to payments to public relief agencies. Paragraph 2(d) with respect to posting notices must also be modified to conform to our decision in Art Metals Const. Co. v. National Labor Relations Board, 2 Cir., 110 F.2d 148. In all other respects the order is affirmed, and the Board may have an order of enforcement.

Order modified, and, as modified, affirmed.