## Independent Transit Association v. Pennsylvania Labor Relations Board

*J. Mettler Pensyl*, for appellant.

*T. McKeen Chidsey*, Attorney General; *M. Louise Rutherford*, Deputy Attorney General, and *George L. Reed*, solicitor, for Pennsylvania Labor Relations Board.

PER CURIAM, December 18, 1950.—The petition for review presently before this court is a statutory proceeding in the nature of an appeal pursuant to section 9, subsec. (*b*) of the Act of June 1, 1937, P. L. 1168,

as amended, commonly known as the Pennsylvania Labor Relations Act and its amendments.

The appeal of the Independent Transit Association, hereinafter called the association, asks review of the decision and order of the Pennsylvania Labor Relations Board, wherein the petition filed with the board on November 25, 1946, by the association was dismissed. On November 25, 1946, at the time the petition was filed with the board, the S. & N. Transit Company, a Pennsylvania corporation engaged in the transportation of passengers by bus over scheduled and chartered runs in Sunbury, Northumberland and vicinity, had 11 employes. Prior to this date some of the employes became affiliated with Local 764, International Brotherhood of Teamsters, Chauffeurs and Warehousemen of America (American Federation of Labor), hereinafter called the "union", while another group of the same employes organized their own union, known as the Independent Transit Association. After the employes had made an attempt, by vote, to decide which of the two unions they would prefer, and which resulted in a vote of 6 to 5 in favor of the association, the employes favoring the union refused to join the association, whereupon a question of representation arose.

The proceedings before the Pennsylvania Labor Relations Board were initiated by the petition filed by the association requesting an investigation of a question which had arisen concerning the representation of the employes of the S. & N. Transit Company, hereinafter called the employed, in that a minority number of employes of the employer have affiliated with the union, while the majority group, as was alleged, had affiliated with the association. It was alleged in the petition that the unit appropriate for the purposes of collective bargaining is the association, representing a majority of the employes. The board directed an investigation, ordered a hearing and fixed December 6.

1946, as the date of hearing. Thereafter, upon charges of unfair labor practice having been brought against the employer by the union, a joint hearing was ordered in the instant case, which was entered as case no. 204 of 1946, and the unfair labor practice case was entered as no. 209, of 1946. James L. Price, Esq., was certified as the trial examiner, and testimony was taken in the two cases on December 13 and 19, 1946. On March 24, 1947, the board issued a decision and order fixing April 8, 1947, as the day for the holding of an election and the election was held on April 8, 1947, at which time all employes of the employer voted. One vote, that of Walter Good, was challenged and was placed in a sealed envelope pending determination of his status. Exceptions to the findings of fact, conclusions of law and objections to the decision and order directing an election were filed by the union, and oral argument was had on these exceptions on May 6, 1947.

Following this argument, the board made an order on June 26, 1947, dismissing the exceptions filed in the case against the S. & N. Transit Company and sustained the previous order in which it dismissed the unfair labor charge filed in that particular case. At the same time, with respect to the employes' case, the board excluded one Walter Good, as employe, from the collective bargaining unit and ordered and directed that a second election be held on the question of representation on July 8, 1947. The board therein certified 10 employes out of the total of 11, excluding Walter Good from said unit on the ground that he was a supervisory employe. Exceptions were filed by the association to the board's decision and order of June 26, 1947, containing a petition for modification and review. On July 3, 1947, the association filed a suggestion of change of employes and petition for order for stay of the second election. The second election was held on July 8, 1947, and at this election the votes of

Fred Bixler and George Martz were challenged by the association for the reason that they were not employes of the employer. The result of the election resulted in a tie vote, five votes for the union and five votes for the association. On July 21, 1947, the board issued a nisi decision and order dismissing the petition for investigation and certification of bargaining representatives, filed by the association on November 25, 1946, to which exceptions were filed by the association. Oral argument was held upon these exceptions on August 12, 1947. On September 2, 1947, the board issued its final decision and order dismissing all exceptions and making its nisi order of July 21, 1947, absolute and final. Thereafter, upon petition of the association for an appeal to modify or set aside the order of the board, an appeal was allowed by this court.

The duty of determining the appropriate bargaining unit for employes is placed upon the Pennsylvania State Labor Relations Board: Duquesne Light Company case, 345 Pa. 458, 461. The procedure in certification cases is regulated by section 7, clauses (b) and (c) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.7, as follows:

"(b) The board shall decide in each case whether, in order to insure to employes the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided, That if the majority of the employes of a particular craft signify a wish for a craft unit, the board shall designate the craft unit as the unit appropriate for collective bargaining for the employes of that particular craft.

"(c) Whenever a question arises concerning the representation of employes the board may, and, upon

request of a labor organization, or an employer who has not committed an act herein defined as unfair labor practice, or any group of employes in an appropriate unit representing by petition thirty per centum or more of the employes of that unit, shall investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation, the board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section eight, or otherwise, and may utilize any suitable method to ascertain such representatives, except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days after such request is filed. Any certification of representatives by the board shall be binding for a period of one year, or for a longer period if the contract so provides, even though the unit may have changed its labor organization membership."

It is certain, therefore, that according to a legislative mandate "whenever a question arises concerning the representation of employes, the board may, and, upon request of a labor organization . . . shall investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected . . .".

In accordance with this mandate, the board must determine: (1) Whether a question as to the representation of employes has arisen. If a question as to representation has arisen, the board must determine: (2) The unit appropriate for collective bargaining, and (3) order an election if legitimate doubts as to majority representation exist: Shafer Petition, 347 Pa. 130, 135 (1943). If an election is necessary, the board must determine: (4) Who are the employes entitled to vote at the election, and whether one or more unions should be placed upon the ballot. The board's

determination of these questions must rest upon substantial and legally credible evidence and must be made in the public interest: Duquesne Light Company Case, 345 Pa. 458, 461, 463 (1942). When the investigation is completed, the board (5) : "shall . . . certify to the parties."

Upon judicial review it is the duty of the court to determine whether the findings of the Pennsylvania Labor Relations Board are supported by the substantial and legally credible evidence required by the Act of June 1, 1937, P. L. 1168, as amended, sec. 9 (b), and whether the conclusions deduced therefrom are reasonable and not capricious: Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398; Chapin v. Pennsylvania Labor Relations Board, 356 Pa. 577, 581; Lester v. Pennsylvania Labor Relations Board, 364 Pa. 541, 542.

The exceptions before the court for consideration, twenty-six in number, may be divided into three classifications, viz: (1) Exceptions relating to Walter Good; (2) exceptions relating to Bixler, Martz, Heim and Letterman, and (3) exceptions to the procedure and rulings of the board.

The eight exceptions relating to Walter Good challenge this employe's exclusion from the voting list because of the supervisory character of his employment. In its exception the union challenged Good's inclusion in the voting list because he had supervisory authority, was a spokesman for management and his interests were allied directly with management.

A supervisory employe in his relation to his employer, is an employer within the meaning of the act and in his relation to the laborers under him he is the representative of the employer and is, therefore, an employer under the act: National Labor Relations Board v. Skinner & Kennedy Stationery Co., 113 F.(2d) 667, 670, 671 (1940). It has been the consistent policy of

the Pennsylvania Labor Relations Board to exclude supervisory employes from bargaining units. In this particular it has followed the practice of the National Labor Relations Board.

At the first election the board had decided that Good was not a supervisory employe and was entitled to vote as a member of the appropriate bargaining unit. The vote of Walter Good was challenged and was placed in a sealed envelope pending determination of his status. Upon exceptions filed by the union the board found that Good was a supervisory employe and was not entitled to vote and directed that a second election be held on the question of representation. The sole question before the court is whether the board found Good to be a supervisory employe upon substantial and legally credible evidence. A careful review of the testimony in this regard leads us to the conclusion that the board properly concluded upon a review of the entire record that Good did not properly belong in a rank and file unit because of the supervisory nature of his employment. Walter Good was described by one employe as a route supervisor and a boss. He supervised the work which was done by others. He told other drivers what to do and, when things went wrong, the other employes were blamed for it, and he told employes what bus to take and what runs to take, etc. On one occasion an employe named Fenton asked the employer if he could use bus no. 6, and the employer said: "You will have to ask Walter". Good then assigned the bus without consulting the employer. On different occasions, Good instructed drivers to change their routes.

Good's close identification with the interests of management appears repeatedly throughout the record. When the work stoppage occurred on October 29th, it was Good who appeared and got Mrs. Curtis to talk with the employes. After the work stoppage occurred

on November 21st, when the newspaper sought to ascertain the policy of the employer, a reporter interviewed Mrs. Curtis in the company of Good, and in the conversation which ensued in which the policy of the employer was expressed by Mrs. Curtis, Good participated in the conversation.

The board's finding that Good was a supervisory employe was supported by substantial and legally credible evidence and was reasonable and not capricious. We conclude that Good was properly excluded from a collective bargaining unit comprising rank and file employes, and the exceptions in relation to Walter Good must be dismissed.

In regard to the exceptions relating to Bixler, Martz, Heim and Letterman, the record shows that Bixler and Martz were included in the voting unit and Heim and Letterman were not included. It appears that at the second election Good appeared and was permitted to cast a ballot which was placed in a sealed envelope and not opened. Two of the employes, whose names appeared on the voting list, Bixler and Martz, cast ballots, which were challenged and segregated. By direction of the board the challenged ballots of Bixler and Martz were opened and counted. By ruling that Bixler and Martz were entitled to vote and that Heim, Letterman and Good were not entitled to vote, the second election resulted in a tie.

On July 3, 1947, several days before the date of the second election, the association filed a suggestion of change of employes, alleging that Bixler and Martz were no longer employed by the employer and secured permanent employment elsewhere and therefore were not employes entitled to vote at the election. The election was not stayed by the board nor was any testimony taken upon the association's petition. The second election was for the purpose of breaking a tie or giving the employes in the collective bargaining unit as of the

date when the unit was determined, the opportunity of changing their votes, if they so desired, in order that a conclusive result, either for or against representation for a collective bargaining agent may be attained. It is the policy of the Pennsylvania Labor Relations Board to use the check list of voters which had been used at the first election as the check list of voters eligible to vote at the second election.

It is obvious that there was one error in the voting list attached to the order fixing the time and place of election of March 24, 1947. This voting list included the name of Walter Good, on the theory that he was a "maintenance man" employe as of December 19, 1946. The board found upon substantial and legally credible evidence that Good was a supervisory employe and not a rank and file employe. He should have been excluded because of the supervisory character of his employment. Heim and Letterman were not employes on the payroll as of December 19, 1946, and numbering 11. Bixler and Martz were "bus operators" as of December 19, 1946, and their names properly are included in the voting list.

It was the purpose and intent of the board to permit all of the 11 employes as of December 19, 1946, to vote at the second election, except Good. The 10 employes therein named, including Bixler and Martz, were entitled to vote regardless of whether their status as employes had changed or not. Heim and Letterman were not entitled to vote because they became employes after December 19, 1946. We are of the opinion that the board committed no error in including the votes of Bixler and Martz and excluding the votes of Heim and Letterman.

The third group of exceptions relate to the order of the board directing a second election and to its final decision and order. All of these exceptions overlook the fact that a certification proceeding is of a non-

adversary, fact-finding character, in which the board plays the part of a disinterested investigator seeking merely to ascertain the desires of the employes as to their representation. As was said by Judge Sherwood of the Court of Common Pleas of York County in in re York Corporation, 55 D. & C. 337, 343, quoting from Inland Empire District Council, Lumber and Sawmill Workers Union et al. v. Millis et al., 325 U. S. 697, 707 (1945) :

"A direction of election is but an intermediate step in the investigation, with certification as the final and effective action. . . . Nothing in §9(c) requires the Board to utilize the results of an election or forbids it to disregard them and utilize other suitable methods."

The courts of the United States, in considering elections conducted by the National Labor Relations Board, have said that:

"Section 9(c) of the Act, 29 U. S. C. A. §159(c), provides that the Board may take a secret ballot of employees or utilize any other suitable method of ascertaining their representatives; it is silent as to election procedure. Hence the manner in which an election shall be conducted lies in the Board's discretion": Marlin-Rockwell Corporation v. National Labor Relations Board, 116 F.(2d) 586, 588 (1941). In National Labor Relations Board v. Falk Corporation, 308 U. S. 453, 458, 60 S. Ct. 307, 310 (1940), the Supreme Court held that:

"§9 of the Act vests power in the Board, not in the court, to select the method of determining what union, if any, employees desire as a bargaining agent; to this end, the Board 'may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.' "

There is no apparent reason why a different rule should obtain limiting the discretion of the Pennsylvania Labor Relations Board as to the conduct of an

election, which it must hold under the mandatory provisions of the Pennsylvania Labor Relations Act: Shafer Petition, 347 Pa. 130, 136.

Whenever an inconclusive result results from an election and it appears that a majority of the voting employes have not voted against representation by some bargaining representative, it has been the uniform practice of the National Labor Relations Board to order a second election, generally a run-off election, wherein only the union which received the highest vote appears on the ballot at the second election: in re Coos Bay Lumber Company, 16 N. L. R. B. 476. The Pennsylvania Labor Relations Board has not favored the holding of run-off elections, but in many instances ordered second elections. See Brentwood Cab Company's Employees Case, no. 181 of 1947; Fort Pitt Chemical Company's Employees Case, no. 102 of 1947. An election, when ordered by the board, is merely a preliminary determination of fact and we are of the opinion that the board acted within its powers in ordering the holding of a second election inasmuch as the results of the first election were inconclusive. The only method by which some knowledge could be obtained as to the bargaining unit was by a second election. A careful reading of the record in this case leads us to the conclusion that the board acted within the powers conferred upon it under the Pennsylvania Labor Relations Act and that its findings in this case are supported by substantial and legally credible evidence and its conclusions deduced therefrom are reasonable and not capricious.

Inasmuch as the board has refused to certify the association or union as a collective bargaining agent, the question arises as to whether such order is reviewable under the provisions of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended by the Act of May 26, 1943, P. L. 651, sec. 2; as further

amended by the Act of May 18, 1945, P. L. 656, sec. 1, 43 PS §211.9 Supplement.

Originally, section 9(*b*) of the Pennsylvania Labor Relations Act, patterned after the National Labor Relations Act of July 5, 1935, ch. 372, 49 Stat. at L. 453, 29 U. S. C. 160(*f*), provided simply for the right of review of anyone aggrieved by a final order. An order certifying a bargaining agent is not a final order: National Labor Relations Board v. Falk Corporation, 308 U. S. 453, 60 S. Ct. 307, 311 (1940), and, likewise, an order dismissing a petition for certification is not reviewable because it is not a final order: A. G. M. Workers' Association v. National Labor Relations Board, 117 F.(2d) 209. This rule was followed in McNary's Appeal, 33 D. & C. 429, in which case it was held that an order of the Pennsylvania Labor Relations Board refusing to certify an employes' association as a bargaining agency is not a final order from which an appeal can properly be taken to the courts.

No doubt, in recognition of the principle above stated, the General Assembly of Pennsylvania amended section 9(*b*) of the Act of May 26, 1943, P. L. 651, 652, sec. 2, 43 PS §211.9, but in so doing provided only for review of an order certifying a collective bargaining agent, and is silent as to orders dismissing petitions for certification.

In in re Philadelphia Transportation Company's Employees Case, March term, 1946, no. 987, the Court of Common Pleas No. 7 of Philadelphia County in a per curiam opinion dated January 23, 1948, held that an order dismissing a petition for certification is not reviewable. We agree with the language used in this opinion, from which we quote:

"The Pennsylvania Labor Relations Act is an act creating new statutory remedies, and the General Assembly, in establishing such new forms of procedure,

may place limitations upon the right of appeal. And where the new statutory remedy expressly delineates judicial review, the courts are bound to adhere to that limitation. Except by wholly ignoring the clear wording of the amendment it cannot be construed to confer on this court the right to review an order dismissing a petition for certification. See Carroll's Appeal, 336 Pa. 257 (1939)."

Appellant's exceptions must be overruled and the petition of review of the association must be dismissed, both because the Pennsylvania Labor Relations Board made a proper administrative determination of all issues in the case, and also because the orders of the board, resulting in the board's dismissal of the petition for certification, are not appealable orders within the purview of section 9(b) of the Pennsylvania Labor Relations Act.

### Order

And now, to wit, December 18, 1950, the petition of the Independent Transit Association to modify or set aside the final order of the Pennsylvania Labor Relations Board of September 2, 1947, and the appeal allowed thereon are hereby dismissed.