**SCOBELL CHEMICAL COMPANY, Inc.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 324, Docket 25374.

United States Court of Appeals
Second Circuit.

Argued May 7, 1959.

Decided June 18, 1959.

Richard L. Epstein, Rochester, N. Y. (Harris, Beach, Keating, Wilcox, Dale and Linowitz, Rochester, N. Y., on the brief), for petitioner.

Nier, Doyle & Nier, Rochester, N. Y., for Scobell Chemical Co., Inc.

William G. McGee, Thomas H. Ramsey, Buffalo, N. Y., for General Counsel, National Labor Relations Board.

Scully, O'Brien & McDermott, Rochester, N. Y., for Local Union No. 118.

Christopher J. Hoey, Attorney, National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, General Counsel, Thomas J. McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Frederick U. Reel, Attorney, all of the National Labor Relations Board, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and EDELSTEIN, District Judge.

EDELSTEIN, District Judge.

The Scobell Chemical Company, Inc. has filed a petition to review and set aside an order of the National Labor Relations Board issued on October 1, 1958, finding that the petitioner refused to bargain [1] with the Union [2] in violation

---

1. The Board also found that the petitioner, by interrogating, threatening and assaulting employees because of their union activities, and by soliciting signatures to an employer sponsored anti-union petition, interfered with, restrained, and coerced its employees in the exercise of their rights under the Act, in violation of Section 8(a) (1). Petitioner raises no issue about the validity of these Section 8(a) (1) findings, apparently relying on the position (taken by the Trial Examiner) that if the Section 8(a) (5) refusal to bargain finding it not sustained, the strike was an economic one which was not converted into an unfair labor

of Sections 8(a) (5) and 8(a) (1) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a) (5) and 158(a) (1), 29 U.S.C.A. § 158(a) (1, 5), and requiring petitioner to bargain with the Union upon request, to reinstate the strikers upon their application and to post appropriate notices. The Board in its answer has requested the Court to enforce its order.

■ The attempt to organize the Company's 13 regular truck drivers and warehousemen commenced on March 22, 1957, when one of those employees, George Spallato, received authorization cards from Anthony Cuseo, a union business agent, and began to solicit signatures. The Board found that by March 28 he had obtained signed application cards from nine employees. On the morning of March 29, before the work day started, Spallato was discharged for violating time card procedures and two other employees, Joshua and David Whitaker, were temporarily laid off. Spallato immediately informed the business agent who, at about 9 o'clock of the same morning, telephoned the Company vice-president. Cuseo informed the vice-president that he had nine cards signed by petitioner's employees and said he wanted to come to the plant to discuss the release of the three men and to bargain about conditions of employment. The Company refused to meet with the Union. On the following day some of the employees went on strike and commenced picketing. The strike was still in effect at the conclusion of the hearing before the Trial Examiner upon the unfair labor practice charges filed by the Union.

The Trial Examiner found that there was no refusal to bargain in violation of the Act. He reached his conclusion, however, on the basis of a definition of the bargaining unit which excluded Joshua and David Whitaker, the employees who had been temporarily laid

off, and whose authorization cards the Union claimed. Having excluded Spallato from the unit on the basis of his permanent discharge and having excluded the designation by one other employee as coerced, the Trial Examiner found that the Union represented only five of the ten employees in the appropriate unit. But the Board, without disagreement on the facts and as a matter of law, concluded that the two Whitakers should be included in the unit on the ground that they had a reasonable expectancy of further employment in the then foreseeable future. This ruling is based on substantial evidence and correctly reflects the law. Marlin-Rockwell Corp. v. N. L. R. B., 2 Cir., 116 F.2d 586, certiorari denied 313 U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548. Having determined that the two Whitakers should have been included in the computation of the number in the unit, the Board further concluded that their designation cards should have been considered in determining the Union's representative status at the time of its request for recognition. Accordingly, the Board found that the Union represented an uncoerced majority of seven out of twelve employees in the unit at the time of its request for bargaining, and the Company's outright refusal at that time to recognize and bargain with the Union was a violation of Sections 8(a) (5) and 8(a) (1) of the Act.

■ The petitioner urges that the Board, after adding the two Whitakers to the unit, merely assumed that they had signed application cards prior to the demand for bargaining, and it is to this assumption that vigorous exception is taken. It is argued that the issue was not passed upon by the Trial Examiner, and that the Board's finding is not only not supported by substantial evidence but is contrary to the evidence. But it is not true, we think, that the Trial Examiner did not pass upon the issue.

practice strike by the subsequent Section 2(a) (1) violations, thus not requiring the reinstatement of strikers.

2. International Brotherhood of Teamsters, Chauffeurs, etc., Local 118.

It is true that he devoted no extended analysis to it, for in his view it was irrelevant. Nevertheless, he found (Jt. App. 39a–40a): "Spallato solicited employees to sign the cards. His solicitations were carried on away from the plant and between March 22 and March 28 he had obtained signatures to nine cards. Employee Howard Burgess, a truck driver employed by the Company on a temporary day-to-day basis, signed a card on March 27 but voluntarily quit his employment on March 28." The reference to Burgess' card is clearly a reference to a tenth card. There were ten cards marked for identification (General Counsel's Exhibits 2–A through 2–J, Jt.App. 102a), and the Trial Examiner specifically excluded Burgess' card from consideration in determining the question of Union majority (Jt.App. 53a, n. 11). Thus the Whitakers' cards were included in the nine cards found to have been signed between March 22 and March 28. The testimony of Spallato (which the Trial Examiner discredited in all matters where it was not corroborated by evidence he credited) as corroborated by that of Cuseo and by the dated cards in evidence, while certainly not conclusive, is nevertheless substantial evidence for the finding of the Trial Examiner which was adopted by the Board.

■■■ But the decision need not rest on such close reading. There is no element of mystery in this case and the order of the Board is supportable on the record as a whole. Even assuming that the Union did not represent a majority of the employees in the unit at the moment of the express request to bargain, there can be no doubt that it represented a majority the next day, at the time of the strike and picketing. The strike and the picket line, in the circumstances here present, cannot be considered to be anything less than a continuing demand for recognition and bargaining. It may be that a request for recognition, without more, does not automatically become a continuing request. See American Federation of Grain Millers, A. F. of L. v. N. L. R. B., 5 Cir., 197 F.2d 451.[3] But there was a good deal more here. There had been a flat turn-down of a clear request to bargain. The strike and picketing immediately followed as an attempt to enforce the request. In view of the employer's response to the original request, a further request *in haec verba* would have been a vain and useless formality. See N. L. R. B. v. Burton-Dixie Corp., 10 Cir., 210 F.2d 199, 201. Moreover, while a request to bargain is prerequisite to the employer's duty to bargain, N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660, the request need take no special form, so long as there is a clear communication of meaning. See Joy Silk Mills v. N. L. R. B., 87 U.S. App.D.C. 360, 185 F.2d 732, 741, certiorari denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350; see also Lebanon Steel Foundry v. N. L. R. B., 76 U.S.App.D.C. 100, 130 F.2d 404, 407, certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530. It would be impossible to conclude that the Union was not seeking to persuade the employer to accede to a demand for collective bargaining or that the employer misunderstood the meaning of the effort. Indeed, late in April the employer tangibly evidenced its awareness in a petition for an election (filed after the Union had filed the unfair labor practice charges that initiated this litigation) al-

---

**3.** This case involved the proviso to Section 10(b), 29 U.S.C. § 160(b), 29 U.S. C.A. § 160(b), which precludes a complaint based upon any unfair labor practice occurring more than six months prior to the filing of a charge with the Board and service of a copy on the person against whom the charge is made. The Board found that an original refusal to bargain occurred prior to the cut-

off date, precluding a finding of unfair labor practice. And at the time of the cut-off date, strikers had been replaced, destroying the union's status as majority representative. The Court rejected the theory of a continuing obligation to bargain, which, without request, renewed itself each day after the first refusal, so that the first refusal created and set in motion a continuing tort.

**926**

leging that the Union was seeking recognition. At no time did the petitioner base its refusal to recognize and bargain with the Union upon any expressed doubt that the Union represented a majority. In any event, the tactics of attrition adopted by the employer, the subject of findings that are not contested, are entirely inconsistent with the existence of any genuine doubt. N. L. R. B. v. Consolidated Machine Tool Corp., 2 Cir., 163 F.2d 376, certiorari denied 332 U.S. 824, 68 S.Ct. 164, 92 L.Ed. 399; N. L. R. B. v. Stow Mfg. Co., 2 Cir., 217 F.2d 900, certiorari denied 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751; N. L. R. B. v. Pyne Molding Corp., 2 Cir., 226 F.2d 818. To the extent that any explicit findings by the Board may be lacking, they are so cogently implied on so compelling a record that a requirement of further findings would be idle ritual.

The petition to set aside the order is denied, and the cross-petition to enforce it in full is granted.