NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CROSCILL CURTAIN COMPANY AND DURHAM DRAPERY COMPANY, Inc., Respondent.

No. 8366.

United States Court of Appeals Fourth Circuit.

Argued Oct. 11, 1961.

Decided Dec. 20, 1961.

Lee M. Modjeska, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin J. Welles, Atty., National Labor Relations Board, Washington, D. C., on brief), for petitioner.

E. C. Brooks, Jr., Durham, N. C., (Brooks & Brooks, Durham, N. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and BRYAN, Circuit Judges.

SOPER, Circuit Judge.

The National Labor Relations Board petitions for the enforcement of an order in which it directed Croscill Curtain Company and Durham Drapery Company, Inc. (1) to cease and desist in various ways from unlawfully interfering with its employees in the exercise of their right to bargain collectively through representatives of their own choosing, and (2) to offer reinstatement with compensation to its former employees, Ardie Britt and W. G. Pleasant, whom the Board found to have been discriminatorily discharged in violation of Section 8(a) (3) and (1) of the National Labor Relations Act. The Company accepts the directions contained in the first part of the order but resists the direction to reinstate the discharged employees with compensation for back pay.

The Company manufactures and sells curtains at its plant in Durham, North Carolina. The operations of the plant are seasonal, the spring season running from January to March and the fall sea-

son from July to October. Employment in the plant varies from approximately 300 workers during the periods of peak activity to about 180 employees during slack periods.

In March 1960 the International Ladies' Garment Workers Union, AFL–CIO, made efforts to organize the employees which were strongly opposed by the plant manager, Herbert Schwartz, and the general manager, Al Rosen. A number of employees, including Pleasant, who was subsequently laid off, engaged in a sit-down strike on March 11 in the plant which led to discussions with the management wherein the employees demanded more pay and union organization, and the management promised an increase in pay of an undetermined amount but threatened to close the plant if it was organized. The next day, Saturday, March 12, Ardie Britt and Lessie Goodwin, another employee, distributed union literature and solicited members outside but near to the plant and they were ordered to desist in their actions but refused to do so. The same day Rosen announced the amount of the increase in wages but renewed the threats to close the plant if the Union came in.

On Monday, March 14, Britt notified the Company that she had joined the Union and during the next three weeks became a leader in various activities designed to promote the Union cause and took part in a number of conferences with the managers who endeavored, without success, to persuade her to stop the formation of the Union. On the next day, Tuesday, March 15, the managers had a meeting with a committee of nine employees, including Britt and Pleasant, at which Rosen announced increases in wages, holidays and vacations with pay, insurance and other benefits, to take effect immediately; and on March 16 these and other benefits were announced at a meeting of all of the employees and the employees were cautioned to disregard the promises of the Union and to accept the benefits promised by the management without the necessity of paying Union dues.

During the next two weeks there was a lull in the Union activities of the plant. On March 31 the Company called another meeting of employees at the plant and announced an increase in the authority of a number of supervisors who would have the power to discharge employees. One of these supervisors was Marie Dameron and the undisputed evidence shows that before and after the meeting on March 31st she warned Britt that she must not engage in talking about the Union in the plant upon penalty of being discharged.

On April 4th Britt was elected the spokesman for the employees' committee. She made an unsuccessful attempt to arrange a meeting between the committee and the management. On April 5 the committee, including Britt, approached Schwartz in the plant during working hours and attempted to lodge complaints about working conditions but Schwartz refused to recognize the committee, ordered them to return to their jobs and threatened them with discharge if they failed to do so. All of them obeyed the order, including Britt except that she returned to her machine only after she had finished what she had to say.

Two days later Britt was discharged under the following circumstances. During the morning some discussion concerning the Union took place between Britt and a co-worker, Nellie Godwin, a non-union member working at a machine which faced that of Britt. Godwin complained to Dameron that Britt was interfering with her work and Dameron reported the incident to Schwartz who came to Britt's machine and told her that she had been directed not to talk of Union matters in the plant and discharged her. Later Schwartz explained to inquiring members of the Union that he had discharged Britt because she had interfered with the business of the plant and was obliged to make a martyr of someone and Britt was the most logical person.

The Trial Examiner who heard the testimony and recommended the reinstatement of Britt and Pleasant, which was approved by the majority of the three member board, one member dissenting,

attributed her discharge to her leadership in the Union's campaign and her militancy in presenting the protests of the employees to the management. He described the discharge and stated his conclusions and recommendations in the following terms:

"She was summarily discharged on the morning of April 7, by Schwartz, on what credible evidence shows was a trumpted up charge that Britt was interfering with the work of others. That morning, for the first time, an antiunion employee was placed at a machine immediately in front of Britt. This employee overheard some trivial remark Britt made, and complained to the supervisor, who in turn reported to Schwartz, that either she be moved or she would go home. Schwartz admitted that he did not take the trouble to query Britt above the matter, but promptly fired her.

"The Trial Examiner believes it unnecessary, in view of the undisputed display of management's hostility toward Britt because of her union activity and of the above-cited precipitating incident, to review in detail all the confused, contradictory, and inconsistent testimony offered by the Respondent for the purpose of showing that Britt actually was discharged because of her union activity during working hours. The Trial Examiner can place no reliance upon any of such testimony, and finds no merit in the reason for the discharge advanced by the Respondent. Schwartz' own testimony reveals that not until after he had discharged Britt did he call in some of the employees to query them about Britt.

"The preponderance of credible evidence, the Trial Examiner concludes, sustains the allegations of the complaint as to Ardie Britt."

Our examination of the record with respect to Britt's discharge, which the Trial Examiner did not deem it necessary to review, convinces us that the evidence most pertinent to the point cannot be fairly described as "confused, contradictory and inconsistent", and that the characterization of the discharge upon which the dismissal was based as "trumpted up" is not justified. It is true that the management regarded Britt as a prime mover in the effort to form a union and, therefore, she became in their judgment a disturbing factor in the plant; but it is equally true that Britt had been warned to desist from her efforts on behalf of the Union in the plant during working hours on penalty of discharge, and that she had disregarded the injunction.

Rosen testified that on March 31 he told Britt that he had been getting complaints from the workers about her attempts to influence them during working hours and that if she continued the practice she would be fired.

Schwartz testified that he had received complaints from a number of workers that Britt was bothering them with union talk in the rest rooms and at the machines and that he forbade her to annoy the workers in this way, and also that he had instructed Dameron to tell Britt she must confine her actions in the plant to her work or that she would be discharged.

Dameron stated that she had received complaints from a number of the workers, whom she named, that Britt interfered with them at their work and in the rest room by talking to them about the Union and that she warned Britt on March 31st, as she had been instructed to do, and that in addition she gave the warning to all the girls in her department.

Britt herself testified at great length and in much detail as a witness for the Board, and stated that on March 15th she was warned not to voice her opinions about the Union and also acknowledged that on March 31st she had been warned by Dameron as the latter testified.

There is abundant testimony that Britt did not heed these warnings. The evidence on this point is given not only by

Dameron but by seven or eight workers who testified that in the period between March 31 and April 7th they had been disturbed at the machines or in the rest room by Britt's talk on behalf of the Union and had made complaint to their supervisor in respect to it. In other words, they corroborated the testimony which Dameron had given.

Against this detail testimony there is merely the general denial of Britt that she did not talk about Union matters in the rest room and the testimony of one of the workers who said that Britt did not go to the rest room more frequently than the other employees.

The incident which led immediately to the discharge on April 7th followed an interchange or dispute between Britt and Nellie Godwin, one of the workers in the plant. On that morning Godwin, finding some of the machines out of order, selected one opposite to Britt's. Previously during the Union campaign, Britt had solicited Godwin to join the Union but Godwin had refused and told Britt in positive terms that she would have nothing to do with it. Prior to April 7th Godwin, like the other workers above referred to, had complained that Britt was bothering her by Union talk during working hours.

The testimony differed as to the conversation which took place on April 8th while the two women, on opposite sides of the Union matter, were at their machines. It is clear, however, that the talk involved allusion to Union matters and Union men and that Godwin was so much disturbed that she complained to Dameron and demanded to have her seat moved to another machine away from Britt's. The discharge followed when the complaint, like those that had been made during the preceding period to the management, was reported to Schwartz.

■■ Taking the testimony as a whole into consideration we do not think that the Examiner was justified in sweeping aside the testimony as to Britt's conduct as unworthy of belief and insufficient to warrant serious consideration.

On the contrary the probabilities are strong that the preponderance of the testimony with respect to Britt's conduct correctly describes the behavior of an eager partisan who aspired to be a leader of the women and induce them to join the Union, and resented the opposition of Godwin and the other women who composed a majority of the workers in the plant. We recognize that it is for the Board and not for this court to pass on the credibility of the testimony, but it is the duty of the Board as set out in Section 10(e) of the statute to base their findings on "substantial evidence on the record considered as a whole", and we do not think that has been done in this case with respect to the discharge of Britt. Our conclusion is that that portion of the order of the Board which refers to her should not be enforced.

With respect to Pleasant, who was laid off on April 7, 1960 at the end of the spring season, the same conclusion is justified. He was an assistant receiving clerk and had served in that capacity from September 1959 as an assistant to his supervisor who with him were the only members of the department. After he was laid off the supervisor was able to do all of the work alone except on occasions when the load was heavy and he was given assistance for a few hours. When Pleasant was laid off he was told that he would be recalled about the 1st of August and he was actually recalled and put to work on July 11, 1960 before the Examiner filed his report; but it does not appear that the Examiner had any knowledge of this fact. The Examiner's finding that Pleasant was discharged for union activities is based on a number of circumstances including the fact that he took part in the sit-down strike on March 11, that he was known to the Company to be an adherent to the Union, that he was a member of the committee led by Ardie Britt who conferred with the management on March 15th and was among those who endeavored to interview Schwartz on April 5th and was directed to return to work upon penalty of losing his position, and that he was also a mem-

ber of a group who visited Schwartz to inquire into the reason of Britt's discharge immediately before he was laid off. The Examiner also based his conclusion on the fact that Pleasant had never before been laid off during "slack periods" and was experienced in other departments.

These circumstances furnish some basis for the conclusion of a discriminatory discharge but they do not tell the whole story. The Examiner makes no mention of the fact that Pleasant had been in the employ of the Company during only one slack period, since his employment did not begin until September 1959. Nor does the Examiner take into account the testimony that there was no work for him in the receiving department and no other shortage of labor in other departments to which he could be assigned. Nor does the Examiner make any mention in his summary of the evidence that 19 other employees of the Company were laid off on the same day as Pleasant and that at the same time the Company retained in its employ at least four workers who had been active leaders of the union movement and had served on the committee which conferred with the management in the endeavor to secure benefits for the employees, and on April 5th had been threatened with discharge. Under these circumstances we conclude that the Examiner's conclusions were not based on the whole record in the case and that portion of the order which requires the reinstatement of Pleasant should not be enforced.

Accordingly, the order of the Board will be modified by striking out the references to Ardie Britt and W. G. Pleasant in subparagraph a. of paragraph 2, relating to affirmative action to be taken by the employer, by striking out subparagraph b. of paragraph 2, and also by striking out the references to Ardie Britt and W. G. Pleasant in the final paragraph of the notice to be posted by the employer as directed by the Board's order, and as so modified the order will be enforced.

Modified and enforced.