NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JESSE JONES SAUSAGE COMPANY
and Jones Abattoir Company,
Respondent.

No. 8710.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1962.

Decided Nov. 5, 1962.

Mary Griffin, Atty., National Labor Relations Board (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Marion Griffin and Alexander B. McMurtrie, Attys., National Labor Relations Board, on brief), for petitioner.

E. C. Brooks, Jr., Durham, N. C. (Brooks & Brooks, Durham, N. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

The National Labor Relations Board here petitions for enforcement of its order of May 5, 1961, issued against the employer upon a finding of violations of sections 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (1, 5) (1956). The Board's order, reported at 131 NLRB 46, directs the employer to bargain collectively with the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, as certified employee representative.

The case arises out of the union's efforts to organize the production and maintenance employees of the company's meat packing plant in Garner, North Carolina. On September 18, 1958, the union filed a representation petition seeking certification as exclusive bargaining agent. On December 16, 1958, the Board directed an election, which was held on January 6, 1959. The tally of the ballots then showed 34 votes for the union, 35 against, 1 void, and 14 challenged. Eight of the challenged ballots had been cast in favor of the union by employees laid off for lack of work shortly before the election.

Because the challenged ballots, if valid, might determine the outcome of the election, the Acting Regional Director conducted an ex parte investigation, after which he recommended in particular that the company's challenges be overruled as to the eight ballots cast by laid-off employees. The Board adopted his recommendation and issued a revised tally on May 29, 1959, now showing 42 votes for the union and 36 [1] against. On June 4, 1959, the union was accordingly certified as bargaining agent.

Since that time the company has persisted in its refusal to recognize or bargain with the union, and this forms the basis of the Board's determination that the company is guilty of unfair labor practices warranting the issuance of the present order. The company resists enforcement on the ground that the evidence fails to support the Board's rulings on the eight challenged ballots here in question and that certification of the union is therefore void. The company also takes exception to the ex parte investigation by the Acting Regional Director, during which the challenged ballots were opened and recorded.

## I. THE EIGHT CHALLENGED BALLOTS

Here the outcome of the election was decided by the votes of eight employees who admittedly had merely been laid off for lack of work, rather than dismissed for cause. The question as to each was whether he was eligible to vote in the Board election, and in each instance this is to be determined by inquiring whether the employee had at the time of the election a reasonable expectation of re-employment within a reasonable time in the future. Scobell Chemical Co. v. N. L. R. B., 267 F.2d 922 (2d Cir.1959); N. L. R. B. v. Fresh'nd Aire Co., 226 F.2d 737 (7th Cir.1955); Whiting Corp. v. N. L. R. B., 200 F.2d 43 (7th Cir.1952); Marlin-Rockwell Corp. v. N. L. R. B.,[2] 116 F.2d 586 (2d Cir.), cert. denied, 313 U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548 (1941). The employer concedes that such is the correct test for determining voter eligibility, but argues that the employment of the eight employees in question was permanently terminated in 1958 and that therefore none of them had any reasonable expectation of re-employment at the time of the January election.

---

1. The single ballot which had been considered void in the original tally was found valid, raising the votes against the union from 35 to 36.

2. In the Marlin-Rockwell case, at 588, Judge Thomas Swan expressed the rationale of the above rule: "A man who is laid off with reasonable expectation of being called back as soon as the employer's business picks up may well be concerned in the working conditions to which he will probably return and feel a lively interest in the selection of a collective bargaining representative. It is not unreasonable to include such a man in the voting unit."

However, the Board's findings to the contrary are supported by substantial evidence. The record as a whole discloses that the company's business is subject to seasonal fluctuations in that its production and sale of meat products regularly sink to a low level between November and April. As a consequence, the company has followed the practice of reducing its work force during the slack season. It appears that such was the case in 1958. Between October 23 and December 5, in anticipation of the seasonal drop in business, it discharged at least 16 workers, including the eight who later voted in the election. Of these eight, several had experienced winter lay-offs in past years but eventually were recalled to work. When they cast their ballots they expected soon to regain their jobs. This is strongly indicated by the fact that five non-voting co-workers also laid off in 1958 did return to work the following spring. This evidence, including the plant manager's candid admission that the lay-offs could be attributed to the normal winter decline in business, goes far to show that the reduction in working force was regarded by all concerned as only temporary.

In addition to the evidence of a seasonal pattern of lay-off and recall, the Board's decision is fortified by the mutually corroborative testimony by all eight employees that when told that they were being laid off for lack of work, they were individually assured by company officials that jobs would be available to them in March or April, 1959, when business picked up. The plant superintendent did not deny making the promises of recall attributed to him and, although the business manager did make such a denial, his testimony in this regard was discredited by the trial examiner. That resolution of the issue of credibility is based on substantial evidence and may not be attacked on review. N. L. R. B. v. Pugh & Barr, Inc., 231 F.2d 558 (4th Cir.1956); N. L. R. B. v. Schooltimer Frocks, Inc., 224 F.2d 336 (4th Cir. 1955). Compare N. L. R. B. v. Croscill Curtain Co., 297 F.2d 294 (4th Cir. 1961).

While such promises are not necessarily binding offers of re-employment, they are entitled to much weight in determining whether the eight discharged employees had such reasonable expectations of returning to work in the near future as to entitle them to vote in the election. On a parallel issue the Second Circuit has said: "In the case at bar the company had no contractual seniority obligations, but it did in fact expect to recall its former employees when work revived; such was its customary practice, although there was no obligation to rehire them. In our opinion the mutual expectation of re-employment justified the Board in treating the employee relationship of the laid-off men as continuing. * * * It was therefore proper to allow them to participate in the election." Marlin-Rockwell Corp. v. N. L. R. B., supra, 116 F.2d at 588.

It is true that none of the eight employees in question was ever rehired, or applied for his job in 1959. But the critical issue is whether they had a reasonable expectation of re-employment at the time of the election and not whether they were eventually reinstated. Cf. Gerber Plastics Co., 110 NLRB 269. The company further alleges that after they were laid off it installed new machinery which eliminated their jobs. Assuming that subsequent changes in the company's personnel requirements made it impractical or inexpedient to rehire all of its idle employees, such developments after the election "cannot color the picture as it stood on the critical date." N. L. R. B. v. Belcher Towing Co., 284 F.2d 118, 121 (5th Cir.1960).

It is stressed on behalf of the company that production has been declining over the years and the contention is made that it could not be expected to recall the eight employees with whom we are here concerned. This claim lacks merit. In the spring and summer of 1959 the company proceeded in normal fashion to increase its working force above the winter level

to meet the accelerated demands of the busy season. Not only did it rehire five of the nonvoting laid-off employees, but it also gave jobs in its packing room to seven newly hired persons without offering similar employment to the eight who voted for the union, despite their seniority as experienced workers in the packing department. From this and the fact that the challenged ballots of these employees had been opened and counted in favor of the union, the Board not unreasonably concluded that the company was motivated to slam the door in their faces —in other words, that they were not recalled because of their affiliation with and support of the union.

In view of these circumstances, we think that the Board properly concluded that the eight with whom we are here concerned had a reasonable expectation of future re-employment at the time of the election and were therefore eligible to vote.

## II. THE EX PARTE INVESTI-GATION

As an affirmative defense to enforcement of the order it is urged that the employer is not obligated to bargain with the union because the Acting Regional Director opened the challenged ballots before a hearing was conducted on the company's exceptions and objections. After the ex parte investigation, however, the Board reopened the matter and the company was afforded an opportunity to be heard and to present evidence at a hearing before a trial examiner. Nevertheless, the company asserts that it was prejudiced in that each witness knew how the others had voted before the Board had affirmatively established that they were eligible to take part in the election.

We cannot accept this contention. Assuming that the witnesses had prior knowledge that the challenged ballots had been cast for the union, there is no indication whatsoever that it influenced their testimony. Nor does it appear how the opening of the ballots, even if premature, could render the election unfair or affect its outcome. Moreover, the Acting Regional Director was cloaked with the Board's authority, and Congress has "entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to fair and free choice of bargaining representatives by employees." N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946). Thus it was for the Board, and it is not for this court, to exercise a discretion as to "whether or not the election should be set aside for irregularities in procedure." N. L. R. B. v. National Plastic Products Co., 175 F.2d 755, 758 (4th Cir.1949). Here the Board adequately protected the company's interests by awarding a full hearing to consider its grievances, an act which was entirely discretionary. See section 102.69(d), Rules and Regulations of the National Labor Relations Board.

For the reasons stated, the order of the Board will be enforced.

Enforced.