**GENERAL ELECTRIC COMPANY, SPE-
CIALTY CONTROL DEPARTMENT,
Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**United Electrical, Radio and Machine
Workers of America, Intervenor.**

**No. 11147.**

United States Court of Appeals
Fourth Circuit.

Argued June 1, 1967.

Decided Sept. 20, 1967.

Francis V. Lowden, Jr., Richmond, Va.
(R. Kenneth Wheeler, Hunton, Williams,
Gay, Powell & Gibson, Richmond, Va.,
and Martin F. Conner, III, Cincinnati,
Ohio, on brief), for petitioner.

John D. Burgoyne, Atty., National La-
bor Relations Board (Arnold . Ordman,
Gen. Counsel, Dominick L. Manoli, Assoc.
Gen. Counsel, Marcel Mallet-Prevost,
Asst. Gen. Counsel, and Lawrence M.
Joseph, Atty., National Labor Relations
Board, on brief), for respondent.

Frank J. Donner and Robert Z. Lewis,
New York City, on brief, for intervenor,
United Electrical, Radio and Machine
Workers of America (UE).

Before SOBELOFF, BOREMAN and
CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

After seventeen months of intense
campaigning, a consent election was held
on May 7, 1965, among production and
maintenance employees at General Elec-
tric's Specialty Control Department plant
in Waynesboro, Virginia. There were
531 votes for the Union,[1] nine votes for
an intervening union,[2] 443 votes against
the unions, and twenty-eight void and
challenged ballots. The Company filed
timely objections to the election. After

1. United Electrical, Radio and Machine
Workers of America (UE).

2. International Union of Electrical, Radio
and Machine Workers, AFL-CIO (IUE).

its contentions were rejected, the Company refused to bargain with the certified Union and sought judicial review of the Board's findings.

The Company has abandoned all but two of its original objections to the election. They are based on alleged Union misrepresentations. The first statement consists of a single sentence in a sixteen-page Union booklet and reads, "In fact the janitors in Canada get more money than skilled employees at GE Waynesboro." [3]

The Board assumed for purposes of its decision that the statement was a material misrepresentation which affected the outcome of the election.[4] The Board ruled, however, that the election result should stand since there was an adequate opportunity for the Company to reply before the election. Compare NLRB v. Bata Shoe Co., 377 F.2d 821 (4th Cir. April 6, 1967).

We have made a careful review of the record and reject the Company's position that there was no substantial evidence on which the Board could find that it had an opportunity to make an effective reply. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Company's brief concedes there is substantial evidence to support the Board's finding that the booklet was distributed to employees at the beginning of the morning shift on May 5, two days prior to the election. Its position is that distribution to employees does not necessarily mean that the booklet came to the Company's attention. But Manager of Employee Relations Tulloch testified that during the entire seventeen months campaign period he had been able to obtain from the plant cafeteria Union literature on the day of distribution. The Board could permissibly infer that the cafeteria source did not suddenly run dry, and that discarded Union literature could have been obtained simply by picking it up—as had been the Company's established practice.

The comparative wages of GE employees at Waynesboro had been a principal issue throughout the Union campaign and, as the Board observed, since the Company had already replied to similar statements about wages of Baltimore janitors "it could be expected to be on the alert to consider the same argument * * * as soon as it was publicized."

The second alleged misrepresentation appeared in Union literature distributed on May 6, the eve of the election, and stated that:

### "WHY NOW?

"For over one year UE has passed out leaflets without interference. Yesterday the police stopped UE from completing the distribution. Earlier several company supervisors threatened us with police interference and now they have done so. How desperate can GE be to resort to keeping information from GE workers? UE will try to get you the information as best we possibly can."

In its reply brief filed with this court, the Company belatedly asserts that its objection to this misrepresentation raised material issues of fact requiring a hearing. Although not required to do so, we have reviewed the record, and conclude that no hearing was required since

---

3. The paragraph in which this sentence appears reads:
  "Every job in the plant is underrated by GE. The Waynesboro GE plant is among the lowest paid GE plants in the United States and Canada. In fact the janitors in Canada get more money than skilled employees at GE Waynesboro. UE can change all this by negotiating wage rates which fit the skills of the employees and bring your rates up to UE rates in other GE plants."

4. The Board had in an earlier opinion stated that the sentence to which the Company objects is "readily subject to an interpretation which accords with the facts * * *." It had concluded, therefore, that "[a]t most, * * * this statement is ambiguous and subject to different interpretations," and that "it is unlikely that this one comment among 16 pages of 'Fact' and the many other preelection circulars would be likely to have any significant effect on employees."

the Board in overruling this objection assumed the facts to be as stated by the Company. See NLRB v. Bata Shoe Co., supra, 377 F.2d 821.

The Board adopted the Regional Director's recommendation that the Company's objection based on the May 6 statement be overruled. The Regional Director assumed the falsity of the charge of Company-sponsored police interference, but concluded that the statement would not reasonably impair the employees' free choice.

The Regional Director considered the Union charge in the nature of a disparaging remark rather than a representation in respect to a condition of employment central to employee concern. Compare NLRB v. Bata Shoe Co., supra; NLRB v. Bonnie Enterprises, Inc., 341 F.2d 712 (4 Cir. 1965). The Regional Director noted that this was not an instance "where the presenting party possessed intimate knowledge of the subject matter so that employees would be expected to attach added significance to its assertion." Compare NLRB v. Bata Shoe Co., supra.

Moreover, the Regional Director cited one among several factors which served to rebut the Union charge: the Company subsequently permitted distribution of Union literature on its own property. It was also reasonable to infer that to GE employees ensnarled in the traffic jam caused by Union distribution on May 5 the reason for police interference was obvious—i. e., to relieve the congestion.[5] Perhaps equally obvious was that distribution was not prohibited but merely limited by the police on May 5.

■ We are unable to say in view of the entire record that the Board erred in concluding that this statement did not constitute an interference with employee free choice. The Board's conclusion is within the area of discretion exercised by it in election matters. NLRB v. Jesse Jones Sausage Co., 309 F.2d 664, 667 (4th Cir. 1962).

The 8(a) (5) order to bargain is Enforced.

---

5. An affidavit from the local Chief of Police stated:

"[A]utomobile traffic * * * was backed up for approximately one half mile near General Electric Drive which leads to the [plant] * * *. [T]he traffic tie-up was being caused primarily by certain parties who were distributing leaflets * * *. The parties were standing in General Electric Drive and were thus obstructing the free flow of traffic by standing in said roadway * * *. [O]fficers instructed the parties who were distributing * * * leaflets * * * to stand along the side of the roadway rather than in said roadway and to distribute * * * leaflets only to the * * * occupants of automobiles which would pull out of the normal line of traffic * * *."