**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HONDO DRILLING COMPANY, Respondent.**

**No. 27943.**

United States Court of Appeals, Fifth Circuit.

June 16, 1970.

Rehearing Denied Aug. 25, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., N.L.R.B., Washington, D. C., Elmer P. Davis, Director, Region 16, N.L.R.B., Fort Worth, Tex., for petitioner.

Joseph Connally, Odessa, Tex., for respondent.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

GEWIN, Circuit Judge:

The National Labor Relations Board seeks enforcement of an order issued against respondent, Hondo Drilling Company (Hondo). The Board found that Hondo violated section 8(a) (5) and (1) of the National Labor Relations Act [1] by refusing to bargain with Local 826, International Union of Operating Engineers (the Union), the certified representative of a unit of Hondo employees. The refusal to bargain is not denied, and was employed in order to contest the certification of the Union. We enforce the order.

Hondo, a New Mexico corporation with its principal place of business in Midland, Texas, is engaged in the business of drilling oil wells under contracts with major oil companies. Its operations are primarily conducted in the proven fields of the area known as the Permian Basin.[2] Hondo owns five drilling rigs, two or three of which are in operation on an average day.[3] Each rig is operated by a four-man crew consisting of one driller and three "roughnecks." When a rig is in service, three, four-man crews are required daily to permit continuous operation. For each operating drill rig, Hondo's supervisor assigns a "tool pusher" who has direct supervisory control of the rig and the responsibility for hiring the drillers necessary for its operation. The drillers in turn hire their own crews of roughnecks.

It takes eighteen days, on the average, for a rig to complete a well.[4] When a particular job is finished and there is no available work elsewhere, the rig is taken out of service ("stacked") and the employees are terminated. Hondo experiences a high turnover of employees; during the year preceding the election petition, it employed 224 roughnecks. The average time worked by each was 34 days. Fifty-three of the roughnecks worked on more than one rig during this period and averaged working 88 days per man; seventy-one worked less than 10 days. One hundred four of the roughnecks voluntarily quit before the completion of the job on which they were employed. Hondo attempts to keep complete crews for two rigs, 6 drillers and 18 roughnecks, constantly available. It also appears from the record that drillers consider it desirable to reemploy former crewmen where possible. Hondo considers any roughneck eligible for re-employment, except those who were terminated for cause and those who quit voluntarily before the completion of the former job.

The Union petitioned for a Board election seeking certification as the representative of all of Hondo's drilling employees. Following a hearing, the Board found that an appropriate unit would include:

All derrickmen, motormen, and floorhands, otherwise referred to as roughnecks, employed by the Employer in drilling operations in the area generally known as the Permian Basin,

---

1. 29 U.S.C. § 158(a) (5), (a) (1).

2. The Permian is an area of 95,000 square miles in Western Texas and Eastern New Mexico.

3. During the one year period covered by the exhibits the five rigs worked 170 days, 126 days, 197 days, 217 days, 168 days respectively. Hondo had at least one rig in operation in 342 of 366 days, and two more rigs operated on 276 days.

4. Hondo's drilling operations last from 10 to 30 days.

but excluding all tool pushers, drillers, office employees, technical employees, guards, professional employees, and all supervisors as defined in the Act.

Hondo does not contest the unit determination.

In the same proceeding the Union contended that any person who had been employed in the unit for 10 days during the previous fiscal year should be eligible to vote. Hondo urged that voting should be limited to those actually employed at the time of the election, as determined by the payroll list immediately preceding the Direction of Election. The Board rejected both positions and adopted the following eligibility formula:

> All roughnecks who have been employed by [Hondo] for a minimum of 10 working days during the 90 calendar-day period preceding the issuance of our Decision and Direction of Election herein, and who have not been terminated for cause or quit voluntarily prior to the completion of the last job for which they were employed, as well as all roughnecks whose names appear on [Hondo's] payroll list immediately preceding the issuance of the Regional Director's notice of election. * * *

Under these criteria 33 persons were eligible to vote in the election ordered by the Board. The Union won by a vote of 20 to 6 with 5 challenged ballots.

Hondo timely filed objections to the conduct of the election, which were denied by the Regional Director following a post-election investigation. The Union was then certified. Hondo filed exceptions to the Regional Director's Supplemental Decision and Certification. This was treated as a request for review and was denied by the Board. Subsequently, Hondo refused to recognize the Union or to furnish requested bargaining information, giving rise to the present unfair labor practice charges.

Hondo, the Union, and the General Counsel entered an agreement stipulating certain facts, waiving a hearing before a Trial Examiner, and transferring the case directly to the Board for decision. The Board found that the issues raised by Hondo had been considered and rejected in the representation proceeding, and did not merit reconsideration.[5]

I

Hondo's refusal to bargain was calculated to obtain judicial review of the Union's certification. Unless it can now be justified, this conduct violates sections 8(a) (5) and 8(a) (1) of the Act.[6] Hondo levels its primary attack on the eligibility formula employed in the election. It contends: (1) The Board exceeded its authority in allowing non-employees to vote, and (2) the eligibility formula is a new "rule" promulgated in contravention of the Administrative Procedure Act.[7]

Hondo's objection to the substance of the eligibility formula is without merit. In Shoreline Enterprises of America, Inc. v. N.L.R.B.,[8] this court stated, "Eligibility to vote depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent." In the present case, the Board rejected extreme eligibility proposals offered by both Hondo and the Union.[9] The Board determined that, in

---

5. *See* Pittsburgh Plate Glass Co. v. N. L. R. B., 313 U.S. 146, 158, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); N. L. R. B. v. Douglas Co. Electric Membership Corp., 358 F.2d 125, 129 (5th Cir. 1966); Southwestern Portland Cement Co. v. N. L. R. B., 407 F.2d 131, 136 (5th Cir.), cert. denied, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969).

6. N. L. R. B. v. Belcher Towing Co., 284 F.2d 118 (5th Cir. 1960).

7. 5 U.S.C. § 553.

8. 262 F.2d 933, 944 (5th Cir. 1959).

9. As noted above, the Union argued for extending the franchise far beyond the Board formula to include all employees who had worked 10 days during the past year. In certain circumstances the Board has adopted such a formula. *See* Sprecher Drilling Corp., 139 NLRB 1009 (1962); Gulick Drilling Corp., 139 NLRB 1137 (1961).

light of the company's operations, the purposes of the Act would best be served by extending voting rights not only to those employees actually on the payroll, but also to those who could reasonably anticipate future employment with the company. This latter group included those individuals who were eligible for re-employment under Hondo's policies and who had a recent history of substantial employment with the company. The standard applied by the Board is similar to that approved in cases involving the analogous situation of laid-off employees. In N.L.R.B. v. Jesse Jones Sausage Co.,[10] the court stated, "[Eligibility of laid-off employees] is to be determined by inquiring whether the employee had at the time of the election a reasonable expectation of re-employment within a reasonable time in the future." The present formula is also consistent with prior Board practice regarding units containing intermittent employees.[11]

■ Hondo's contention that the Board may not extend the franchise to individuals who are not currently employed is mistaken since it assumes a classical definition of "employee" which is not binding on the Board.[12] It is Hondo's obligation to demonstrate that the Board's formula is erroneous,[13] and we conclude that it has not met this bur-

den. On the record of the present case, the eligibility formula appears reasonably calculated to enfranchise those roughnecks with a legitimate interest in the terms and condition of employment in the bargaining unit.

■ Relying on N.L.R.B. v. Wyman-Gordon Co.,[14] Hondo argues that the eligibility formula is a departure from prior Board practice,[15] and is, in fact, a rule adopted without satisfying the legislative requisites of the Administrative Procedure Act. It contends that the Board used the Hondo election as a vehicle for the promulgation of a special eligibility rule for application to drilling companies throughout the Permian Basin.

■■ The Board, like most administrative agencies, is authorized to engage in two essential functions: *adjudication* of particular controversies and *legislation*—"the power under certain conditions to make rules having the effect of laws." [16] Its exercise of the latter power is governed by the rule-making provisions, including notice and hearing requirements, of the Administrative Procedure Act.[17] These procedures were not followed in the present case, and we must determine whether they were applicable.

---

10. 309 F.2d 664, 665 (4th Cir. 1962) (citations omitted).

11. *See* Cab Operating Corp., 153 NLRB 878, 883–884 (1965); Farmer's Ins. Group, 143 NLRB 240, 245 (1963); William J. Burns Int'l Detective Agency, Inc., 138 NLRB 447, 448 (1962); Daniel Constr. Co., 133 NLRB 264, 267 (1961).

12. NLRB v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Pittsburgh Plate Glass Co., 177 NLRB No. 14 (1969); *See* Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 61 S. Ct. 845, 85 L.Ed. 1271 (1941). In discussing the problems naturally inherent in a rigid definition of the term "employee" the *Hearst* opinion refers to the test for such determination as a *"formula"* rather than a hard and fast *rule*. Subsequent legislation dealing with the

specific problem involved in *Hearst* does not detract from its reasoning on the point here involved.

13. N.L.R.B. v. Bar-Brook Mfg. Co., 220 F.2d 832 (5th Cir. 1955); N.L.R.B. v. Atkinson Dredging Co., 329 F.2d 158, 163–164 (4th Cir.), cert. denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964).

14. 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed. 2d 709 (1969).

15. As we have observed, the Hondo eligibility formula is not the radical departure from prior practice that Hondo would represent. See note 9 *supra*.

16. N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 770, 89 S.Ct. 1426, 1432, 22 L.Ed.2d 709 (1969) (concurring opinion).

17. 5 U.S.C. § 553.

In *Wyman-Gordon,* the Supreme Court considered the validity of the Board's determination in *Excelsior Underwear, Inc.,*[18] that in future representation elections the employer must file a list of the names and addresses of eligible voters with the Regional Director for use by all parties to the election. The Board had decided that the *Excelsior* rule should only be given prospective effect and did not apply it in the *Excelsior* case itself. *Wyman-Gordon* generated four opinions, with the dispositive coalition differing on the crucial question of whether the *Excelsior* rule was subject to the rulemaking requirements of the Administrative Procedure Act. As a result its teachings for the present case are less than obvious.

Our augury is considerably aided by the recent decision of this court in American Machinery v. N.L.R.B.[19] There the company had argued that a back pay order of the Board was a departure from prior policy and subject to the rulemaking requirements of the Administrative Procedure Act. In rejecting this argument, the court discussed the *Wyman-Gordon* decision:

Although no opinion commanded a majority, six Justices agreed that the Board had erred in attempting in an adjudicatory proceeding to lay down a broad prospective rule, binding upon the affected public generally, but not adjudicating the rights and obligations of the parties before it. The Board's decision, therefore, had not constituted adjudication but had been an attempt to promulgate a rule in violation of the rulemaking provision of the Administrative Procedure Act. It has been suggested that "the *Excelsior* rule would have been approved if it had been applied to the parties before the

Board in that case." The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 226 (1969).[20]

As in *American Machinery,* the present determination occurred while the Board was acting as a court, adjudicating a controversy between the parties before it. "*Wyman-Gordon* did not hold that the Board is obligated to follow the rulemaking procedures of the Administrative Procedure Act whenever it announces new policies." [21]

Moreover, the *Excelsior* rule by its terms applied to all employers involved in future representation elections. The "Hondo rule" is merely the eligibility formula devised for the Hondo election; it does not purport to be an inviolate standard to regulate future situations. The fact that the same formula may have been employed in other elections is not controlling. Though disapproving the *Excelsior* rule, the plurality opinion in *Wyman-Gordon* stated:

Adjudicated cases may and do, of course, serve as vehicles for the formulation of agency policies, which are applied and announced therein. See H. Friendly, The Federal Administrative Agencies 36–52 (1962). They generally provide a guide to action that the agency may be expected to take in future cases. Subject to the qualified role of *stare decisis* in the administrative process, they may serve as precedents.[22]

We conclude that in fashioning the Hondo eligibility formula, in the course of the Hondo representation proceedings, the Board did not engage in rule-making within the meaning of the Administrative Procedure Act.

## II

■ Hondo also contends that the Union failed to comply with a require-

---

18. 156 NLRB 1236 (1966).

19. 424 F.2d 1321 (5th Cir. 1970).

20. 424 F.2d at 1329.

21. *Id.*

22. 394 U.S. at 765, 766, 89 S.Ct. at 1429.

ment, contained in a footnote to the Board's direction of election, that it cooperate with the company and the Regional Director in compiling a voter eligibility list.[23] It interprets this requirement as an order that the Union furnish its own list of eligible voters. Hondo states that it requested such a list and it was not furnished. It urges that this failure deprived it of the opportunity of communicating with those individuals who were allowed to vote under the Board's eligibility formula but whose names did not appear on the payroll lists of the company.

We feel that Hondo misconstrues the Board's order as it relates to the Union. The list was to be furnished in the first instance by Hondo. The Union was only ordered to cooperate in compiling the ultimate eligibility list. The Union furnished the Board with names and addresses appearing on authorization cards in its possession. It also corrected addresses on the initial list furnished by Hondo. The Board's *Excelsior* rule does not by its terms apply to Unions; absent a specific order by the Board, the Union was under no obligation to furnish the list requested by Hondo.[24] The Regional Director properly concluded that the Union had complied with the Board's order.

In accordance with the foregoing, the order of the Board is enforced.

23. The footnote in question states:

In view of the nature of the employment in this industry, we direct that both the Union and the Employer cooperate to the fullest extent with the Regional Director for Region 16 in the preparation and compilation of an election eligibility list containing the names and addresses of all eligible voters. In addition, we shall require that an election eligibility list containing the names and addresses of all known eligible voters be filed by the Employer with the Regional Director for Region 16 within 7 days after the date of this Decision and Direction of Election, and that a supplemental list containing the names and addresses of the remaining eligible voters be filed by the Employer with said Regional Director within 7 days after the issuance of the Notice of Election by the Regional Director. No extension of time to file these lists shall be granted by the Regional Director except in extraordinary circumstances. Failure to comply with these requirements shall be grounds for setting aside the election whenever proper objections are filed. Excelsior Underwear, Inc., 156 NLRB 1236.

24. *See* N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 766, 89 S.Ct. 1426 (1969) (Fortas, J.).