**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRI-SERVICE DRILLING COMPANY, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BRAHANEY DRILLING COMPANY, Respondent.**

**Nos. 29076, 29336**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 6, 1970.

* [1] Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

**1272**

Elmer P. Davis, Director, N.L.R.B., Fort Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet Prevost, Asst. Gen. Counsel, William Wachter, Stephen Solomon, Eugene B. Granof, Corinna Lothar Metcalf, Attys., N.L.R.B., for petitioner.

Brooks L. Harman, Joseph Connally, Odessa, Tex., for respondents; Turpin, Smith, Dyer, Hardie, & Harman, Odessa, Tex., of counsel.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

These cases followed a parallel course before the Board [1] and have arrived in this court almost simultaneously. Because of the similarity of the issues raised, we direct that they be consolidated. We enforce the Board orders.

Both companies refused to bargain with the Operating Engineers' Local 826, which was approved in representation elections ordered by the Board for each company. Each had reserved by stipulation with the Board in the pre-election proceedings the issue of the eligibility of workers to vote in the elections.[2] The Board found in each case that the formula it had applied in Hondo Drilling Co., 164 NLRB 416 (1967), enforced, 428 F.2d 943 [5th Cir.,1970], and Carl B. King Drilling Co., 164 NLRB 419 (1967), was applicable here also. It therefore held the challenges of both companies to be unfounded and held both to have violated sections 8(a) (5) and (1) by their refusal to bargain.

Both companies operate in the Permian Basin area of west Texas and eastern New Mexico. Both operate drilling rigs which require the services of a driller (supervisor) and four roughnecks on each crew. The driller is responsible for hiring and firing his own crew members. Operation of the rigs at any one site lasts only a matter of days or weeks, running twenty-four hours a day, seven days a week. Because of the arduous work and the relatively short duration of any one operation, the employment pattern in both companies is markedly unstable. Many men quit to find work nearer home or of longer duration or to rest. Some are bumped by men with more seniority. And many find it necessary to move to other companies after the completion of a job because of unavailability of nearby employment with their current employer. Many may be rehired by their current company, in some cases several times.

Tri-Service drills wells within a radius of about 150 miles from its headquarters in Midland, Texas. It owns seven rigs and drills to depths of between 5,000 and 20,000 feet. For a sample period of one year, Tri-Service's operations lasted for ten days on the well site and ranged up to 178 days on the longest job, the average being 59.5 days. The seven rigs operated by Tri-Service, in three shifts, would require 84 roughnecks if operating at once. During the

---

1. *Brahaney* was 176 NLRB (1969), and *Tri-Service* 176 NLRB (1969). Both were decided the same day on appeal from the same trial examiner.

2. This distinguishes the similar recent case of NLRB v. Rod-Ric Corp., 428 F.2d 948, [5th Cir., 1970], where the company was foreclosed, on an application by the Board for enforcement, from raising the issues raised here for failure to except to the original eligibility determination.

sample year, an average of only four rigs were operating at any one time. The company employed 384 roughnecks in all over the sample period.[3]

In order to encourage a steadier employment relationship with roughnecks, Tri-Service offered a one-week paid vacation for employees who remained with the company for more than a year, and contributed to an insurance program for continuous employees of more than six months. Exceptions were worked out to allow for participation in both programs despite necessary breaks in employment. Twenty-two men qualified for vacations and 38 for insurance contributions during the sample year.

Brahaney owns and operates five rigs out of Midland, drilling wells 9,000–13,500 feet deep, and averaging 56 days per well over a sample two-year period. Over these two years an average of 2.08 rigs were drilling at any one time. Brahaney employed a total of 228 roughnecks during 1967 who averaged 32 days in the company's employ.[4]

In both cases the Board applied the formula first applied in *Hondo* and *King,* which makes eligible to vote in a representation election

all roughnecks who have been employed by the Employer for a minimum of 10 working days during the 90-calendar-day period preceding the issuance of our Decision and Direction of Election herein, and who have not been terminated for cause or quit voluntarily prior to the completion of the last job for which they were employed, as well as all roughnecks whose names appear on the Employer's payroll list immediately preceding the issuance of

the Regional Director's Notice of Election in this proceeding.

164 NLRB at ——. This court approved the formula with respect to Hondo in enforcing the Board's order, 428 F.2d 945. The respondents urge us to deny enforcement on the grounds that the *Hondo* formula is invalid because it represents an administrative "rule" promulgated in violation of the rule making procedures of the National Labor Relations Act, 29 U.S.C. § 156, and the Administrative Procedure Act, 5 U.S.C. §§ 551, 553, and that, if valid, the formula is inapplicable to the facts of their cases.

This court already has held that the Board did not violate the Administrative Procedure Act in promulgating the *Hondo* formula. *Hondo, supra,* 428 F.2d 946. Moreover, respondents were afforded an opportunity before the trial examiner to demonstrate that the application of the *Hondo* formula would be inappropriate in their respective cases. See NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 349, 73 S.Ct. 287, 97 L.Ed. 377, 383 (1953).

Turning to the issue of application, the companies urge that an indeterminate number of employees eligible under the *Hondo* formula are in fact unworthy to vote because they are "drifters" who have no genuine interest in the employer's employment practices. But *Hondo* explicitly excludes from eligibility those employees who quit prior to completion of a well or are terminated for cause. And the companies' policy is to consider any past employee for new work. These same considerations were present when,

---

3. The breakdown of these employees by duration of employment is:

*Tri-Service*

Employees working 301 days and over .. 17
Employees working 201 to 300 days ... 13
Employees working 101 to 200 days ... 24
Employees working 51 to 100 days .... 19
Employees working 26 to 50 days ..... 50
Employees working 11 to 25 days ..... 67
Employees working 1 day to 10 days ...194
Total ..........................384

4. Time worked for Brahaney per employee between April 1, 1967 and March 31, 1968 was:

Employees working 301 days and over ..  0
Employees working 201 days to 300 days  9
Employees working 101 days to 200 days 11
Employees working 51 days to 100 days 23
Employees working 26 days to 50 days 26
Employees working 11 days to 25 days 49
Employees working 1 day to 10 days .. 86
Total ..........................204

in *Hondo*, this court approved the Board's use of the formula.

Both companies would distinguish themselves from Hondo Company on the ground that it was characterized as a "small-rig" company while they utilize longer drills. The crux of their argument is that they offer opportunities for longer sustained employment than Hondo, that some of their employees take advantage of this possibility, and that to make short-term employees eligible to vote is unfair to those who have a more consistent relationship of employment with the company. In comparison with Hondo itself, this argument has some slight merit with respect to Tri-Service.[5] But Tri-Service's employment patterns do not appear significantly different or more stable than those in *King*, the companion case to *Hondo*.

Moreover, the decision whether to apply the *Hondo* formula to these companies, like other matters of voter eligibility, is within the sound discretion of the Board. *See* N.L.R.B. v. Bar-Brook Mfg. Co., 220 F.2d 832 (5th Cir. 1955) (seasonal workers). Considering the frequent reemployment of roughnecks, indeed the mutual expectations of employer and roughnecks that former employees with a continuing interest in the company may be rehired, we find no abuse of that discretion. The Board's cut-off point for determining how much relative stability in employment is required to create a statutory employee in any particular case will not be disturbed absent such a showing.

Since the Board did not abuse its discretion in finding that the *Hondo* formula is applicable to the operations of both respondents, the Board's orders will be enforced.

---

5. It has little merit with respect to Brahaney. Compare the figures in fn. 5, *supra*, with the figures in fn. 4, *supra*. The average period of employment for each Brahaney employee in 1967, while obviously an incomplete indicator of the stability of any company's work force, was almost identical to the sample year average for Hondo (32 and 34 respectively).