**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Joe SMITH and Ray Boling, d/b/a Chaparral Drilling Company, Respondents.**

**No. 30047**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.
Jan. 26, 1971.

---

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

Elmer P. Davis, Director, Region 16, N.L.R.B., Fort Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert E. Williams, John H. Ferguson, Attys., N.L.R.B., for petitioner.

Joseph Connally, Odessa, Tex., for respondents.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Having concluded that Smith and Boling, doing business as Chaparral Drilling Company, violated the National Labor Relations Act §§ 8(a) (1), (5)[1] by refusing to bargain with the Union[2] which had been certified as the exclusive bargaining agent of their employees, the National Labor Relations Board ordered these employers to cease and desist from unfair labor practices, to bargain with the Union upon request, and to take other affirmative action.[3] Because we find that the Board properly certified the Union, we grant enforcement of the order.

Chaparral drills oil and gas wells in the Permian Basin area of West Texas. The Company began operations in April 1968 with one drilling rig; it acquired a second rig in January 1969. As of April 15, 1969, both rigs had been used approximately 95 percent of the time available. Neither rig was ever out of service for as long as a week, and usually the Company was able to apprise its drillers concerning the location and time of future work.

Despite relatively steady operation and efforts to ensure greater permanency among employees,[4] the Company has

---

1. 29 U.S.C.A. §§ 158(a) (1), (5).

2. Local 826, International Union of Operating Engineers, AFL-CIO.

3. The Board's Decision and Order are reported at 182 N.L.R.B. No. 32.

4. The Company offered various fringe benefits, including group hospitalization and disability insurance for which the Company pays part of the premium, travel-time payments, free gasoline at the rig-site for employees who drive, and several pairs of gloves distributed monthly to each employee on the job at the time of distribution. Apparently other companies provide similar inducements. *See, e. g.,* N.L.R.B. v. Tri-Service Drilling Co., 5 Cir. 1970, 432 F.2d 1271, 1273.

experienced a high turnover rate among its roughnecks. During nine months of its first year, the Company, which had only one rig in operation, needed a maximum of nine roughnecks per day. During the ensuing three months, when both rigs were operable, the Company required a maximum of eighteen roughnecks. In that whole year, the Company's drillers hired ninety-five different roughnecks to fill these positions. Forty-seven roughnecks worked fewer than ten days during the year; thirty-three worked twenty-four or more days (a period longer than the average job and longer than thirteen of the nineteen jobs actually completed); and twenty-two worked forty-three or more days, on at least two different jobs.

On March 28, 1969, the Union petitioned the Board for a representation election. At the representation hearing, the parties agreed that the Company's roughnecks comprised an appropriate unit but disagreed as to which roughnecks should be eligible to vote in the election. The Regional Director, after hearing all arguments, concluded that the formula which the Board had devised and applied in Hondo Drilling Co., 1967, 164 N.L.R.B. 416, 1968, 171 N.L.R.B. No. 181, enforced, 5 Cir. 1970, 428 F.2d 943, could solve the eligibility problem in this case. Utilizing that formula, he ruled that the unit employees eligible to vote included not only those appearing on the employer's payroll immediately prior to the Regional Director's Notice of Election, but also those who, in the preceding ninety calendar days, had been employed by the Company for a minimum of ten working days and who had not been terminated for cause or had not quit voluntarily prior to completion of the last job on which they were employed. The Board subsequently denied a Company request for review of the Regional Director's ruling because it raised no substantial issues warranting review.

We agree with the Board's determination. While the Company was blessed with a steady series of jobs during its first year, work was "available" to its employees only in a restricted sense. Like the Hondo Drilling Company, this Company operates in a large geographic area and moves the situs of its operations with relative frequency—twenty times in its first year. Work at a particular site is short-lived: the average well was completed in twenty-two days, including rigging-up and rigging-down time; eight of the nineteen completed jobs required between thirteen and eighteen days. After a well is finished, moving a rig to a new location may take almost a week—a period during which work is not available, the roughnecks are not paid, and all are free to seek other work. Thus, the basic pattern of intensive, frequently relocated operations at widely separated sites was present, in spite of the Company's relatively steady use of its equipment. The *Hondo* formula stresses consideration of this significant variable in the drilling industry. In the instant case, the Regional Director's, and the Board's, eligibility requirements appear calculated to "enfranchise those roughnecks with a legitimate interest in the terms and condition[s] of employment in the bargaining unit." N. L. R. B. v. Hondo Drilling Co., 5 Cir. 1970, 428 F.2d 943, 946. The Company has not successfully shouldered its burden of demonstrating that the formula has been erroneously applied in this factual context. *Id.* at 946 & n. 13; *accord,* N. L. R. B. v. Tri-Service Drilling Co., 5 Cir. 1970, 432 F.2d 1271, 1273.

*Of course, we are cognizant of the dichotomy between the factual situation here and that in* Hondo. *The Chaparral rigs remained in operation approximately 95 percent of the time available. Thus, it appears, Chaparral roughneck employment records should evidence more stability if the members of the bargaining unit truly had a legitimate interest in consistent employment with the Company. However, we are also aware that like other drilling companies, Chaparral frequently moves its rigs to distant locales. The Company failed to*

show that its hiring or personnel policies so differ from those of other Permian Basin drilling companies that departure from, or revision of, the basic *Hondo* formula is warranted here. Drillers recruit roughnecks, and higher Company officials ostensibly did not know whether roughnecks are hired in the vicinity of each drilling site or at a central location, such as Company headquarters. Even if Chaparral drillers normally recruit at Company headquarters, the distance employees must drive to work at its rigs varies with each job. Some well-sites are located more than 100 miles from Company headquarters, while others are within fifty miles. Under the circumstances, then, a roughneck's refusal to accept a job at one of the Company's sites does not necessarily indicate a lack of continuing interest in employment with Chaparral. The fact that roughnecks work seven-day weeks and soon tire of the constant toil further buttresses this conclusion.

■ Consequently it is apparent that at any particular time, a number of roughnecks with a demonstrated interest in the Company's working conditions may not be working for Chaparral. However, a significant number of these absent workers may reasonably be expected to return in the future. The *Hondo* formula protects such employees yet excludes those who have no recent history of substantial Company employment and little likelihood of future reemployment. Thus utilization of the formula in determining eligibility was a permissible exercise of the Board's discretion; it was not arbitrary or capricious. See N. L. R. B. v. Tri-Service Drilling Co., *supra*; N. L. R. B. v. Bar-Brook Mfg. Co., 5 Cir. 1955, 220 F.2d 832, 834.[5]

■ On the day of the representation election, the doors leading to the polls were locked prior to the scheduled time for poll closing. The Company objected that eligible voters were thereby precluded from participating in the election. The Regional Director overruled this objection on the ground that the alleged exclusion could not have affected the election results. Of the twenty-two persons on the eligibility list, fifteen voted: ten cast ballots for the Union, and five against. The Regional Director sustained challenges to three other ballots on the merits. Four of the seven persons on the eligibility list who did not vote gave affidavits stating that they had not attempted to vote. According to Company records, a fifth was ineligible because he had quit prior to completion of the last job for which he was hired. Having conducted an administrative investigation, the Regional Director concluded that the premature locking of the polls prevented, at most, two employees from voting. Since the votes of these two employees would not have sufficed to affect the election results, the Director properly overruled the Company's objection. That the Board upheld the Regional Director's decision without a post-election evidentiary hearing gives us no pause in the factual context of this case. See N. L. R. B. v. Golden Age Beverage Co., 5 Cir. 1969, 415 F.2d 26, 32–33; National Cash Register Co. v. N. L. R. B., 5 Cir. 1969, 415 F.2d 1012, 1015; N. L. R. B. v. Difco Laboratories, Inc., 6 Cir. 1968, 389 F.2d 663, 667–668, cert. denied, 1968, 393 U.S. 828, 89 S.Ct. 91, 21 L.Ed.2d 98.

Likewise, the Company's contention that the Union failed to comply with a requirement in the Decision and Direction of Election that it cooperate in compiling a list of eligible voters lacks merit. The Company proffered no evidence that the Union withheld any names or addresses currently in its possession. See N. L. R. B. v. Singleton Packing Corp., 5 Cir. 1969, 418 F.2d 275, 280; N. L. R. B. v. Golden Age Beverage Co.,

---

5. This Court has already held that the Board did not violate the Administrative Procedure Act in promulgating the *Hondo* formula since it did not engage in rulemaking within the meaning of the Act. N.L.R.B. v. Hondo Drilling Co., *supra* at 946–47; N.L.R.B. v. Tri-Service Drilling Co., *supra*.

*supra* 415 F.2d at 33; Southwestern Portland Cement Co. v. N. L. R. B., 5 Cir. 1969, 407 F.2d 131, 135, cert. denied, 1969, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71.

Consequently we conclude that enforcement of the Board's order certifying the Union as the employees' bargaining representative should be granted.

Enforced.