BIRMINGHAM ORNAMENTAL IRON
COMPANY, Petitioner
Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent
Cross-Petitioner.

No. 79–1915.

United States Court of Appeals,
Fifth Circuit.

April 17, 1980.

Bradley, Arant, Rose & White, Allen Poppleton, Birmingham, Ala., for petitioner cross-respondent.

Elliott Moore, Deputy Assoc. Gen. Counsel, Michael F. Messite, Atty., NLRB, Washington, D.C., for respondent cross-petitioner.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal tests the correctness of an NLRB certification of a bargaining agent. The issue was drawn by the union's filing an unfair labor practice complaint, charging Birmingham Ornamental with violation of §§ 8(a)(5) and (1) of the National Labor Relations Act for refusing to bargain. Two other subsidiary issues are also to be decided: (1) Whether evidence supports the board's determination that a request to bargain was actually sent to the employer; and (2) the validity of a published rule against "any solicitation" on the company's premises.

In July 1977, by stipulation, a valid election was held to determine whether the bargaining unit wished to be represented by the union. The talley showed 134 votes for, 138 against, and seven votes not counted, because they were challenged. The challenge as to six of them was based upon the fact that their names were not on the employer's eligibility list. The challenge as to the seventh was subsequently resolved and is not at issue here. The regional director concluded that these six persons, who had been involved in a reduction in force on June 3, 1977, had a reasonable expectancy at the time of the election of being reemployed with the company in the near future and that they were therefore eligible to vote. Accordingly, the regional director concluded that the seven were eligible voters, and recommended to the board that the challenges to their ballots be overruled.

On August 29, the company filed timely exceptions to the regional director's report on challenged ballots and order. On November 30, 1977, the board having "reviewed the record in the light of the exceptions" adopted the regional director's findings and recommendations, and remanded to the regional director for the purpose of opening and counting the seven challenged ballots. On December 12, 1977, the company filed with the board its motion for reconsideration and other relief requesting the board to direct a hearing to determine whether the six individuals were "terminated" or "laid off" on June 3, 1977, and whether they had a reasonable expectancy of being reemployed. On January 12, 1978, the board denied the company's motion for reconsideration, noting that it contained nothing not previously considered by the board. The challenged ballots were opened and counted and a revised talley showed 140 votes for the union and 139 votes against it. Thereupon, the board certified the union as the exclusive bargaining representative of the company's employees.

The company's principal contention, in defending its actions in refusing to bargain when called to account by the union's unfair labor practice charge is that the regional director resolved two factual issues: (1) whether the employees were "permanently terminated" or were merely "laid off"; (2) whether there was a reasonable likelihood that they would be reemployed within a reasonable time, regardless of whether they were permanently terminated or were merely laid off. The company made the contention that if they were permanently terminated then they could not be considered employees of the company for voting purposes in August 1977, but contended

also that if this contention was not correct, then there was no basis for the regional director's determination that there was a reasonable likelihood that the six would be rehired.

The regional director's report stated that the evidence before him was to the effect that the six employees had been "terminated" or "laid off"[1] as a part of an economic reduction in force; that none of the employees remember being told anything concerning the duration of the layoff; the company personnel manager stated that employees on layoff are considered for vacancies; that the company had in the past recalled a number of employees from layoff; that the past year's rate of attrition in the particular division averages slightly over two employees per month; that following the June 3 reduction in force, four bargaining unit employees resigned in June and four more in July; and that two of the openings were filled by the recall of Pendleton and Chapple, two of the six persons with whose status we are now concerned. Both of these men were working for the company on the day of the July 13 election.

The district director also determined that the company's history revealed a policy of recalling former employees. In February 1975, during a reduction in force, 39 employees were "terminated." The company's records disclose that 24 of then 39 were rehired by the company. The company's records disclose that these rehires occurred: three within 25 days, eight more within six months, eight more within a year, three more between one and two years, and two more after two years. Sixteen of these rehires returned to their original jobs with the company. Based on these facts, which the director found undisputed on the record before him, he concluded that the separated employees had a reasonable expectation of reemployment and were eligible to vote in the election.

1. Because the company attaches a significance to the terminology used, *i. e.*, contending that if the employees were "terminated" then it followed automatically that they could not be con-

The only substantial issue on this appeal is whether the board could accept the director's recommendation as final and binding without conducting a hearing as provided for under the rules and regulations of the board. 29 C.F.R. § 102.69(c), (e). This raises one of the most difficult questions this and other courts have had to decide in representation cases. This is a difficulty which we recognize, because such an important step in the management of labor relations could be equated with other procedural steps as to which the parties may reasonably claim to have the right to a full due process type hearing. For cases of this Court dealing with this problem, *see NLRB v. Golden Age Beverage Co.*, 415 F.2d 26 (1969), where at page 33 we stated the prevailing rule, and where, in footnote 6, we cited a number of cases in which this Court had concluded that a hearing was required. We repeat the analysis made by this Court in *Golden Age Beverage* as establishing the rule of this Circuit:

It is well established that a hearing is not required in every case to determine the validity of objections to a Board-conducted election, *N. L. R. B. v. Smith Industries, Inc.*, 403 F.2d 889, 894 (5th Cir. 1968), and especially not "where if all the facts contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.'" *N. L. R. B. v. Bata Shoe Company*, 377 F.2d 821, 826 (4th Cir. 1967), quoted approvingly in *N. L. R. B. v. Smith Industries, Inc. supra*, 403 F.2d at 892; *accord, N. L. R. B. v. Capitan Drilling Company*, 408 F.2d 676 (5th Cir. 1969); *N. L. R. B. v. Douglas County Electric Membership Corp., supra*, 358 F.2d at 131; *cf., Neuhoff Brothers Packers, Inc. v. N. L. R. B.*, 362 F.2d 611, 615 (5th Cir. 1966); *Anchor Manufacturing Company v. N. L. R. B.*, 300 F.2d 301, 304 (5th Cir. 1962). The Board, having made such a finding in the light of the insubstantial allegations submitted by the

sidered as potential rehires, we note here that, as indicated further in the opinion, the terms may be used interchangeably so far as concerns the issue in this case.

Company, cannot therefore be said to have acted outside its discretion when it refused to grant an evidentiary hearing. And this is so notwithstanding the fact that the Board's ultimate conclusion rests upon the "elusive concept of the subjective effect of objective union conduct on 'the minds of voters.'" *N. L. R. B. v. Smith Industries, Inc., supra*, 403 F.2d at 895. An opportunity to observe and examine witnesses, while helpful in determining the effect of union conduct on the voters' exercise of free choice, is nevertheless not ipso facto required; the need for a hearing in such cases is still left to the Board to determine in its discretion. *See Southwestern Portland Cement Company v. N. L. R. B.*, 407 F.2d 131 (5th Cir. 1969); *Anchor Manufacturing Company v. N. L. R. B., supra*. We conclude that this discretion was properly exercised. [Footnote omitted.]

In order to determine whether the standard established by this Court as controlling the right of the employer to have a hearing before final board action was met here, we look first at the exceptions filed to the regional director's report. These exceptions were brief and sketchy and were not accompanied by any tender of proof by affidavit or otherwise. They were as follows:

The General Counsel
The National Labor Relations Board
Washington, D.C. 20570
Attn: Mr. R. Allen

Re: Case 10–RC–11040

Dear Sirs:

A Report on Challenged Ballots and Order was issued by Region 10 in the above-referenced case on August 19, 1977. This letter is to state Employer's exceptions to such report per Section 102.69 of the Board's Rules and Regulations.

1. The conclusion drawn in the Report on Challenged Ballots is inconsistent with the Dismissal Letter in Case 10–CA–12863, issued August 12, 1977, in that the letter states the Employer "terminated" these same men.

2. The investigating Agent has knowledge that several of the terminated men were employed elsewhere, a fact which indicates they were not awaiting or anticipating reemployment.

3. The Report ignores the Employer's totally consistent practice of using the latter date of hire for rehires and does not have any incident of layoff or recall. Yet the report states, "The Employer has in the past recalled a number of employees from layoff."

For these and other reasons the Employer contends that the Report on Challenged Ballots contains prejudicial error and requests the matter be reviewed.

Very truly yours,
s/ D. M. Thompson
CERTIFIED MAIL
RETURN RECEIPT REQUESTED

■ The board's position here is that since the terminology of employees being "terminated" or being "laid off" is unimportant to a decision of the case the first alleged exception, even if credited, would offer no grounds "which would warrant setting aside the election," *N. L. R. B. v. Golden Age Beverage Co., supra*, at 33, *quoting from N. L. R. B. v. Bata Shoe Co.*, 377 F.2d 821, 826. Therefore, the board says that it makes no difference that in a different proceeding involving these same employees, the regional director's letter referred to these employees as having been "terminated." We agree. In *N. L. R. B. v. Hondo Drilling Co.*, 428 F.2d 943 (5th Cir. 1970), it appears that the issue there as to the eligibility for voting in a similar election was whether persons who occasionally had worked on certain well rigs of Hondo had a reasonable expectation of reemployment within a reasonable time in the future, citing *N. L. R. B. v. Jesse Jones Sausage Co.*, 309 F.2d 664, 665 (4th Cir. 1962). In *Hondo*, a recitation of facts stated that "when a particular job is finished and there is no available work elsewhere, the rig is taken out of service ("stacked") and the employees are *terminated*." (Emphasis

added). 428 F.2d at 944. Nevertheless, in that case, the court found that the employees did have a reasonable expectation of reemployment, thus clearly demonstrating that the terminology used in connection with the cessation of employment is not controlling. Thus, exception No. 1, if accepted as true, would not warrant setting aside the election.

A second exception, that several of the terminated men were working elsewhere, is so obviously lacking in relevance to the existence *vel non* of a reasonable likelihood of reemployment as to make this ground border on the frivolous. One would suppose that not only the self preservation of the employee, but the best interests of all concerned would be served by any employee either temporarily or permanently out of work accepting such employment as was available to him or her. There was no evidence that any of the employees accepted what might be called "permanent" employment elsewhere or that any of them had surrendered a desire to return to Birmingham if their old jobs reopened. Thus, exception No. 2 adds nothing for consideration by the board.

Finally, the third exception seems to be merely a statement that when the same individual is hired several times by the company it "uses" the "latter date of hire." If we are to give this statement any meaning at all, it must mean that if persons who are terminated or laid off under this company's plan of operation and are subsequently rehired, they are considered for seniority purposes as of the date of the rehiring rather than the date of an earlier service with the company. This is totally irrelevant to the question whether a former employee had a reasonable expectancy that he would be rehired. The last sentence "yet the report states 'the employer has in the past recalled a number of employees from layoff' " adds nothing to this exception, because it is apparent that the first sentence clearly implies that former employees are rehired and that their date of employment is related to the date of rehiring. Thus, there is noting in this exception that in any way bears upon the question at issue before the board.

It is clear that there was ample evidence before the regional director, partially taken from the company's records, from which the regional director could make the finding that there was a reasonable opportunity for the rehire of these six employees. The exceptions filed do not contest the truth of any of the statements made in the regional director's report, only the conclusions that he drew from the admitted facts. Under these circumstances, we conclude that no hearing was required under the board's regulations. We have previously decided that if these regulations are complied with, the complaining party has not been denied due process. *N. L. R. B. v. Golden Age Beverage Co., supra* at 32.

Birmingham next complains that in reviewing the regional director's action, the board did not comply with its own regulations, in that it did not have before it a complete "record." The asserted lack in this respect was the absence of affidavits accumulated by the regional director, but not included in the record which he forwarded to the board for review. The employer relies upon 29 C.F.R. § 102.69(g) for its contention that such affidavits are a part of the record on appeal to the board. This section, which, obviously, follows immediately after § 102.69(f) which authorizes the board to order a hearing on substantial and material factual issues, provides:

(g) The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in section 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the rec-

ord; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.

Further reliance is placed by the employer on *Prestolite Wire Division v. N. L. R. B.,* 592 F.2d 302 (6th Cir. 1979).

The board responds that the provisions in section (g) which include "documentary evidence" as a part of the record give no support to Birmingham's contention for two reasons: (a) The record described in the first sentence of paragraph (g) is a record to be submitted on appeal to the board after a hearing and, of course, here there was no hearing. (b) The term "documentary evidence" does not include affidavits collected by the regional director in the informal proceeding conducted by him in any event. The board contends that the second sentence controls the situation here. That is the language providing "except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, . . . may append to its submission to the board copies of documents it has timely submitted to the regional director and which were not included in the report or decision." The board contends that such a provision would be totally without meaning if the words "documentary evidence" used above also comprehended affidavits and other materials accumulated by the regional director.

The board also calls our attention to what is an obvious distinction here from the facts in *Prestolite,* where there affidavits and counter affidavits in matters involving credibility choices. The board also noted that in *Prestolite,* the Court of Appeals for the Sixth Circuit clearly recognized that the affidavits need not be included in every record in which no hearing was allowed.

It is no doubt true that in a given case, as in *Tennessee Packers* [*N. L. R. B. v. Tennessee Packers, Inc.*], 379 F.2d 172, 178 (6th Cir. 1967), the objections themselves may be 'shotgunned' and so lacking in factual detail that they may be denied both by the regional director and by the board entirely without recourse to the administrative record.

592 F.2d 306.

■ Here, our conclusion that the exceptions are not adequate to entitle the employer to cause the board to require the holding of a hearing brings it within the exception, even under the Sixth Circuit's *Prestolite* decision, as a case in which the objections "may be denied both by the Regional Director and by the Board entirely without recourse to the administrative record." 592 F.2d at 306. One of the early cases dealing with this type situation is cited in the dissenting opinion in *Prestolite* by Chief Judge Edwards, *N. L. R. B. v. O. K. Van Storage, Inc.,* 297 F.2d 74 (5th Cir. 1961). There, we said:

The National Labor Relations Act, as amended, declares that it is the policy of the United States to encourage establishment of the collective bargaining relationship; the Act then specifies the procedure by which the relationship is to be established. Nowhere in the Act is there a specific requirement that the Board conduct post-election hearings on objections to the conduct of elections; rather, it is implicit in the Act that questions preliminary to the establishment of the bargaining relationship be expeditiously resolved, with litigious questions reserved for the proceeding for review or enforcement of Board orders. The Board nonetheless makes it a practice to hold post-

election hearings on objections to elections, but in keeping with the spirit of the Act does so only when it appears that the allegation relied on to overturn the election have a basis in law *and that there is evidence to support them.* The opportunity for protracted delay of certification of the results of representation elections which would exist in the absence of reasonable conditions to the allowance of a hearing on objections is apparent. An objecting party who fails to satisfy such conditions has no cause for complaint when and if his demand for a hearing is denied.

*Id.* at 76. (Footnote omitted.) (Emphasis added.)

Under these circumstances, we need not decide whether, if sufficient factual allegations are stated in the exceptions to the district director's report to meet these requirements, the provisions of section (g) require the inclusion of the affidavits in the regional director's file as a part of the record on review. We have most recently pretermitted deciding this question in a very recent case, *N. L. R. B. v. Dobbs House, Inc.,* 613 F.2d 1254 (5th Cir. 1980). *See* footnote 8. Our opinion in *Dobbs House* clearly supports the proposition that, however Section (g) is construed, the failure to include affidavits as applied to the regional director is not a *per se* basis for setting aside the district director's report. We conclude that such inclusion was not required in light of the record submitted and the failure of the employer to meet the standards set out in *O. K. Van Storage* and other subsequent decisions of this Court. *N. L. R. B. v. Hondo Drilling Co., supra; Southwestern Portland Cement Co. v. N. L. R. B.,* 407 F.2d 131 (5th Cir. 1969); *N. L. R. B. v. Osborn Transportation, Inc.,* 589 F.2d 1275 (5th Cir. 1979).

■ Birmingham makes a further objection to the decision of the board finding it guilty of failing to bargain. It says that the proof offered on behalf of the union that it mailed two certified letters, one to the president and one to the plant manager of the company requesting a bargaining session, was not sufficient to establish the presumption of the receipt of the two letters. We find this contention to be without merit, in light of the proof of the receipt by the union of a receipt for certified mail relating to each of the two letters. Moreover, a glance at the record indicates that when the letters were tendered in evidence they were not objected to by counsel for the employer. Counsel stated: "She is identified that she generated this piece of paper with the markings thereon, Your Honor; therefore, I have no objection to it." Following cross-examination of the general counsel's witness, and after the letters had been admitted without objection, counsel still did not move for their exclusion. They were therefore available to the administrative law judge for his determination of the issue of their having been received.

Finally, Birmingham excepts to the board determination that the company was in violation of § 8(a)(1) of the Act by maintaining overly broad no solicitation rules.

■ The company's employees handbook contains a rule which prohibits "any soliciting on company premises and time without prior approval of management." The company concedes that such a rule is presumptively invalid under the board's decision in *Essex International, Inc.,* 211 N.L.R.B. 749, 750 (1974). However, the company contends that the *Essex* rule does not apply where a rule has been communicated or applied in such a way as to convey an intent clearly to permit solicitation during break time or other periods when employees are not actively at work. Here, the company contends that, although it tendered no evidence with respect to the point, the failure of the employees previously to complain over the years of the existence of this rule was "negative" evidence sufficient to meet the standard of conveying "an intent clearly to permit solicitation." We conclude that the only no solicitation rule ever communicated generally to the employees was the facially invalid one, and in the absence of any evidence to meet the exception to the rule the board could not be faulted for finding the company in violation of § 8(a)(1) of the Act in this regard.

The order of the board will be EN-FORCED.